Owen McGivern, J.
In this equity action, the plaintiff, alleging a joint venture, seeks an accounting from the defendant of the stock of the Hawker Uranium Mines, Ltd., a Canadian corporation organized for the exploitation of certain uranium deposits in Saskatchewan, Canada. The present differences between the parties, Joseph Nastasi, plaintiff, and S. Donald Moore, defendant, both United States citizens, had their genesis years ago in May of 1953, at which time the plaintiff became interested in the development of mineral claims in Saskatchewan. At this period, the plaintiff became acquainted with an Augustus R. Hawker, the owner of several claims in the area; deciding that Hawker’s claims alone were not sufficiently large enough to warrant public interest, through his (Hawker’s) attorneys, the defendant Moore was brought into the picture. *227 Discussions ensued, and after Moore met the plaintiff’s attorney in New York, Hawker Uranium Mines, Inc., a Delaware corporation, was formed. The plaintiff contends, and the defendant’s letter of June 16,1953 lends credence to the contention, that the original intent purposed the issuance of over a million shares of stock which after certain other dispositions, were to be distributed as follows: 40% to the defendant Moore, and 30% each to Hawker and to the plaintiff Nastasi or his nominees, the financing to be effected by a public offering and subscription. As to the crucial questions of the stock-split and the nature of the financing, the plaintiff’s version is borne out by a John J. Laver, the attorney who acted with respect to the formation of this corporation. Since his services went unrequited, his feelings towards the defendant were less than cordial, but making due allowance for his indignation, the court accepts the essentials of his testimony.
In any event, in September of 1953, through a previous acquaintanceship, the plaintiff interested the De Gaetano Securities Co. in the project. Nothing immediately or concretely developed however until the interest of the De Gaetano people was further piqued by the publication of a certain magazine article concerning uranium deposits in Canada. Their interest resuscitated, they communicated with the plaintiff and the defendant, evincing a willingness to float the project financially. Shortly thereafter, Mr. De Gaetano (of the underwriting concern of the same name), his attorney, and the defendant Moore met in Canada, with the plaintiff’s knowledge and trusting concurrence. On the theory, or the pretext, that a Canadian corporation would better facilitate a public sale, a Canadian corporation was organized, and the plaintiff was asked to surrender the name of the Delaware corporation, which he did. In his letter to the plaintiff of October 5, 1953, the defendant reported on the Canadian developments in a manner which he scarcely would have done had he not yet regarded the plaintiff as his co-venturer and an integral part of the burgeoning enterprise.
Thereafter, the De Gaetano Securities Co., Inc., did in fact undertake to underwrite the venture by the vehicle of a public subscription, and after several months of effort finally achieved their aim. Proportionately, as the stock began to move to a successful flotation, the defendant Moore became more and more inaccessible to the plaintiff. The plaintiff Nastasi made repeated demands of Moore for his alleged share of the stock, to no avail. Finally, his letter of December 7, 1953, went unanswered, and thus ended an otherwise beautiful friendship.
*228 At the trial the defendant took the position that when the De Gaetano group did not assume the stock offering in their first September meeting with the co-venturers, a cut-off date occurred vis-a-vis the plaintiff, and in the corporation that ultimately did emerge the plaintiff was but a stranger. An acceptance of this position requires that we somehow sweep under a rug a collection of facts that however will not budge, to wit: the plaintiff was the originator of the project, his initiative launched the venture, it was he who brought Hawker into the enterprise, and from the beginning, as they do now, Hawker’s uranium claims formed the keystone of the corporate assets; the plaintiff unearthed De Gaetano and was the first nexus between Moore and the subsequent flotation of the stock by De Gaetano; the plaintiff acquiesced in the formation of the Canadian corporation, was apprised of such moves by Moore, and at the request of Moore, released the Delaware corporation and withdrew his own nominee from the directorate; the plaintiff was throughout an integral part of the deal and this is confirmed essentially by the testimony of attorneys Laver and Josephson, and recognized by the defendant in his letters, cited supra, and further by his letter of October 13, 1953; such written evidence is entitled to greater weight than oral testimony from an interested party (cf. Susquehanna Silk Mills v. Jacobson, 185 App. Div. 378, 383). It is plain that the plaintiff by his acts, over a period of months, had contributed to the successful floating of the venture and thus acquired a community of interest in it. Success or the possibility thereof having been achieved, equity will not permit him to be jettisoned by his erstwhile partner in the launching of the venture (Meinhard v. Salmon, 249 N. Y. 458).
Accordingly, the court holds that the agreement was made substantially as alleged, that the plaintiff has proved performance on his part, and that the defendant has come into possession of property belonging to the plaintiff under such circumstances that he is required to make delivery thereof, or in the event of inability to do so, to account for the proceeds thereof.
Now, the defendant has raised a number of objections to the relief above granted. First, the defendant contends that nowhere is there an express agreement to share losses, and thus no joint venture is possible. But it is not material to the issues at bar whether the underlying agreement constitutes a joint venture or not. As to the plaintiff, in return for his performance, the agreement contemplated the delivery to the plaintiff of a stated percentage of the shares of the corporation to be organized. The contract and the relationship between the parties were of such a nature that when the defendant received *229 the stock in question, he was under a duty to deliver to the plaintiff his share thereof.
Secondly, the defendant maintains that the letters sustaining the contract do not constitute writing or memorandum sufficient to satisfy the Statute of Frauds. The court, however, finds that there is adequate written evidence of the undertaking signed by the defendant. Furthermore the court does not regard this as a contract for sale within section 85 of the Personal Property Law.
Third, the defendant urges dismissal on the ground that all necessary parties are not before the court. The answer to this is that the obligation of the defendant to the plaintiff is complete and final; the defendant has not been subjected to any claims by third parties claiming rights by assignment or otherwise. As to the claimants, to whom the defendant points with alarm, their claims, if valid, derive exclusively from the plaintiff and may only be asserted against him and the proceeds of his cause of action. With specific reference to the contention that Hawker is a necessary party, this simply is not so because the plaintiff’s allegations and proof are addressed solely to the defendant Moore.
Lastly, the defendant advances the argument that the plaintiff is in court with unclean hands because he is suing on a contract illegal under section 69 of the New York Stock Corporation Law. This particular statute prohibits the issuance by a corporation of stock in exchange for promotional services. With reference to it, the court holds that the contract in suit does not violate the statute because it provided that the stock was to be issued by the corporation in exchange for mineral claims, a valid quid pro quo. The fact that the parties agreed as to the division among themselves of the validly issued stock does not bring the statute into play. In connection with this final objection the defendant also urges that the prospectus issued in connection with the public sale of the stock ran afoul of the Securities and Exchange Commission regulations because it did not reveal the plaintiff’s interest. But the initial contract as and Avhen made did not contemplate a violation of this statute and Avas therefore not illegal. The fact that in the performance of the contract the law may have been violated does not render the plaintiff culpable since he did not affirmatively participate in the alleged violation.
As to final judgment, the plaintiff prevails, and the defendant will be directed to deliver to the plaintiff within 30 days after service of the judgment to be entered herein with notice of entry, a number of shares of the subject corporation equivalent to 30% of the total number of shares caused by the defendant *230 Moore to be issued to himself and Hawker. The plaintiff has not established any right, however, to relief by way of an accounting with respect to the stock or otherwise except as herein expressly stated. But, in the event of the defendant’s failure to make such delivery, either party may apply before me for further relief at the foot of the judgment for the ascertainment of the value of the stock and its payment. Settle judgment.