187 So.2d 579 (1966)
Mrs. Altie McGahey JONES (Revived by Executor)
v.
T.A. McGAHEY, Jr.
T.A. McGAHEY, Jr.
v.
Mrs. Altie McGahey JONES and R.L. Edmonson, Jr.
No. 44001.
Supreme Court of Mississippi.
June 6, 1966.
*580 Fred Smith, Ripley, and Hunter M. Gholson, Columbus, for Mrs. Altie McGahey Jones.
John H. Holloman, Columbus, for R.L. Edmonson, Jr.
Threadgill & Hicks, Columbus, and Watkins & Eager, Jackson, for T.A. McGahey, Jr.
ETHRIDGE, Chief Justice.
These two cases were consolidated for hearing in the Chancery Court of Lowndes County and in this Court, although they involve different issues, because they were concerned with many interrelated facts. Essentially they involve two issues: (1) the enforceability of an oral contact between two persons to purchase jointly corporate stock for the joint benefit of both; and (2) the propriety of the trial court's decree ordering corporate stock returned to a testamentary trust, and prohibiting without court order its sale by the trustees, who owned the corpus subject to a life estate in the income in another. We hold the oral contract is enforceable, and thus reverse the trial court's decree denying its validity. In the second case, we affirm the decree directing return of the corporate stock to the trust and restricting its subsequent transfer.
The two suits, consolidated for hearing, will be identified by their separate cause numbers in the chancery court. The statement of facts is limited to those essential to an understanding of this decision.

*581 CAUSE NO. 9447
This is a suit by Mrs. Altie McGahey Jones against her brother, T.A. McGahey, Jr., to enforce an oral agreement for the joint purchase from Fred Harrison of a certificate of stock for 18 1/2 shares in Moretti-Harrah Marble Company, Inc. (called Moretti). Mrs. Jones appealed from a dismissal of her bill of complaint.
T.A. McGahey, Sr., of Columbus, Mississippi, died testate in 1958. He was survived by his widow, Mrs. Hortense Wood McGahey, and two children, T.A. McGahey, Jr., (sometimes called Son), the defendant-appellee, and Mrs. Altie McGahey Jones, the complainant-appellant. His other child, Mrs. Wilda Harrison, predeceased him in 1954 and left surviving her minor child by a former marriage, R.L. Edmonson, Jr., and her husband, Fred Harrison. Both Mrs. Jones and Harrison have died during this litigation. After her death following the decree, the action was revived in the name of the executor.
McGahey, Sr.'s will was executed in 1954, while all of his three children were living. He left his property to his three children, but in trust for the purpose of paying the income to his widow during her lifetime. The children were made executors and trustees, with control of the trust in a majority of the trustees. The will provided that, if any of the children should die, then the children of the deceased trustee or executor upon attaining the age of twenty-one should become additional executors or trustees.
Mrs. Harrison died in December 1954, and by will she left half of her property to her husband, Fred Harrison, and one-half to her son, Edmonson, who became twenty-one in August 1963. In December 1963 Edmonson qualified and was appointed an executor and trustee under the will of McGahey, Sr.
Between 1912 and his death in 1958, McGahey, Sr., developed a number of highly successful businesses. They were substantial and were interrelated, dealing in marble, granite, the manufacture of headstones, and allied activities, and consisted of partnerships and corporations engaging in the mining, manufacturing and selling of such stone products. In his lifetime McGahey, Sr., took the members of his family into these businesses and gave them interests in them. The original business was Columbus Marble Works (called Columbus), which manufactured monuments out of granite and marble, and sold these monuments. In the early 1920's Son went to work for his father in this business and has worked there continuously since then. In 1940 Columbus became a partnership by formal articles of partnership, with interests established as follows: McGahey, Sr., 6/24ths; Mrs. Harrison, 6/24ths; Son, 6/24ths; and Mrs. Jones, 6/24ths. After the death of McGahey, Sr., and the purchase of Harrison's interest, the partnership of Columbus Marble Works was owned as follows: Mrs. Jones, 7/24ths; Son McGahey, 7/24ths; the estate of McGahey, Sr., 7/24ths; and Edmonson, 3/24ths.
The various businesses, partnerships, and corporations owned by the McGaheys were interrelated and closely connected, being substantially dependent upon each other for their operations and management. McGahey, Sr., left these businesses so that no one of his three family branches, represented by his two daughters and one son, owned control of any part of them. These businesses were managed from the offices of Columbus at Columbus, Mississippi. Another partnership, composed of Mrs. Jones, her husband, W.L. Jones, Mrs. Harrison, and Son, operated five mail order organizations selling the products of Columbus. Also, Columbus operated as affiliated or subsidiary organizations certain sales units in Alabama, Georgia, Memphis, Tennessee, and Greenwood, Mississippi.
The McGahey family owned and managed two corporations, Moretti, an Alabama corporation located at Sylacauga, Alabama, and Columbia Marble Company, located at Marble, North Carolina. Moretti *582 has 250 shares of stock, all of which is owned by members of the McGahey family except one share belonging to Wilkins, resident manager at Sylacauga.
From McGahey, Sr.'s death in 1958 to late 1963, the partnership of Columbus Marble Works continued to be operated as a partnership by Altie, Son, Edmonson and Harrison. Altie took no active part in this business. Her interests were managed by her husband, W.L. Jones, who was an executive in the business, operating it along with Son. He held a general power of attorney from Altie. Columbus was a successful business, with assets in December 1963 of $975,068.
Son McGahey was the president of Moretti, and W.L. Jones its vice president. The board of directors included them, Edmonson and Wilkins. Son, Jones, Edmonson, and Fred Jones worked for Columbus, and had their offices in its building. The stockholders and directors held their meetings in the offices of Columbus, and the latter was in frequent telephone contact with Moretti. The employees of Moretti made daily and monthly reports to Columbus, addressed to Columbus. Columbia Marble Company also made daily reports to Columbus. Columbus and Moretti had the same auditor. Columbus printed in its annual catalogue a page showing marble furnished for the United States Supreme Court Building in Washington. The marble was quarried by Moretti. Columbus' only practical source of white marble is Moretti, and its business would be substantially affected if Columbus lost the Moretti supply. For a number of years Columbus has filed bids with the U.S. Government for headstones, and in such bids has listed Moretti as an affiliate. This federal headstone business of Columbus amounted to $300,000 in 1963. The great weight of the evidence, we think, reflects that Moretti has been operated as an affiliate, supplier and subsidiary of Columbus Marble Works.
Shortly after the death of Mrs. Harrison in 1954, McGahey, Sr., suggested to McGahey, Jr., and Mr. Jones that they buy the interest of Fred Harrison in the property which he had inherited from Mrs. Wilda M. Harrison. The chancellor found that the defendant and Jones agreed to this and pursuant to this agreement, several years later (in 1959) purchased certain of these properties, including Harrison's interest in the partnership of Columbus and certain real property.
Further conversations were had between McGahey, Jr., and W.L. Jones about their joint acquisition of the Moretti stock from Fred Harrison. The chancellor found that McGahey, Jr., and W.L. Jones, acting for his wife, agreed to purchase the Moretti stock. However, he thought that it was a "rather loose agreement," with no price or guaranty to purchase, and was not enforceable in equity.
However, after a careful consideration of all the evidence on this issue, we have concluded that the evidence reflects a definite agreement between Mrs. Jones, acting for herself, and also through her husband, and Son McGahey, that they were to purchase the Fred Harrison stock in Moretti together and divide it between them. The great weight of the evidence reflects this, as shown by testimony of Mrs. Altie Jones, W.L. Jones, Mrs. Hortense Wood McGahey, and Fred Jones, Altie's son. Son McGahey denied that he had ever agreed with his sister for a joint acquisition of the Moretti stock owned by Harrison. The chancellor found against him on this issue.
On September 17, 1963, appellee purchased for $5,000 a share the 18 1/2 shares of Moretti stock from Fred Harrison at a bank in Columbiana, Alabama. Son said that Harrison did not want the Joneses to get any part of this stock, so before he left Columbus, he prepared a statement, not endorsed on the certificate, that it would not be sold or given to anyone other than the wife or children of McGahey, Jr., or Edmonson. Two or three months later Son endorsed this document, "Accepted *583 and agreed to, T.A. McGahey, Jr." This circumstance does not prevent enforcement of the contract.
There is some dispute as to when Mr. and Mrs. Jones heard about Son's purchase from Harrison, but in December 1963, according to Jones, Son told him about it in his office at Columbus Marble Works. Jones undertook to find out what Son had paid for the stock and to pay Altie's half of it, but Son declined, stating in effect that he had changed his mind, and wanted his children to have the stock. Appellee admitted that he wanted to acquire personal control of Moretti, which he had a right to do, without violating an agreement with his sister. The Harrison purchase, together with the nine shares from the estate in the next case, would have accomplished this.
The great weight of the evidence reflects that Mrs. Altie Jones, both individually and through her husband, W.L. Jones, agreed with T.A. McGahey, Jr., to purchase the Moretti stock of Harrison for their joint benefit and equal division. Moreover, the chancery court found to this effect. It was not one of purchaser and seller, but was in the nature of an agency agreement, partnership or joint venture for a stated purpose, where each party was both a principal and agent for the other. Cf. Sample v. Romine, 193 Miss. 706, 8 So.2d 257, 9 So.2d 643, 10 So.2d 346 (1942). The chancellor found the existence of such a contract, but misconstrued its nature as a purchase and sale, rather than a contract to acquire for the joint benefit of the parties, which it was.
Mrs. Altie Jones said that appellee made a proposition which she accepted, that if he bought the stock from Harrison, he would let her have half of it, and if she bought, she would let him have half of it. Describing the agreement further, she said that, if she bought the Harrison shares, she would divide them with McGahey, Jr., and vice versa. Fred Jones said that in 1962 McGahey, Jr., said that he would be glad when "Altie and I can buy that Sylacauga stock and we can quit fooling with Fred (Harrison)." W.L. Jones stated that in his conversations on behalf of his wife with McGahey, Jr., they agreed they would buy the Harrison stock "at the first opportune time." They would purchase the stock for the joint interests of Altie and Son on a fifty-fifty basis. They would pay whatever they had to for it. After W.L. Jones' disagreement with Harrison, and on Son's suggestion, Jones refrained from trying to purchase the stock, and Son was to negotiate with Harrison for a joint purchase. If Son purchased it, Altie would get half of it, and if Altie purchased it, Son would get half of it. Mrs. Hortense McGahey said that she heard Son and Altie agree to buy the Harrison stock together, share and share alike.
The statute of frauds, Code section 268, pertains to "[a] contract for the sale of any personal property * * * for the price of fifty dollars or upward." Miss. Code Ann. § 268 (1956). It does not proscribe the enforcement in a court of equity of an oral agreement between appellant and appellee to jointly acquire the Harrison stock. The statute refers solely to a contract between a buyer and a seller, but this agreement, well documented in the evidence, was in the nature of a contract for the joint purpose and benefit of both parties.
Williston states the general rule as follows:
A contract by which parties agree to acquire and divide, or to acquire and sell to third persons, or simply to sell to third persons, property for their joint benefit is not a contract to sell, or a sale, within terms of the statute. Williston, Sales § 58 (1948).
To the same effect is 49 Am.Jur. Statute of Frauds § 244 (1943):
A parol agreement between two persons that one shall purchase personal property in his own name and hold it for the joint *584 benefit of both is not within the statute so as to prevent recovery from the purchaser by the other contracting party. Such a transaction is not a sale. An oral agreement between two persons whereby one is to purchase stock and hold it for the benefit of both, at least when partially executed by purchase of the stock, or an oral agreement that one of two joint mortgagees of personal property shall buy it at judicial sale, the other not attending or bidding, and hold, use, and dispose of it for the benefit of both, is not within the statute of frauds. Likewise, if two or more persons enter into a verbal agreement jointly to purchase goods from a third person, the agreement is not one for the sale of goods which must be in writing under the statute of frauds.
Hunt v. Elliott, 80 Ind. 245, 41 Am.Rep. 794 (1881); Carter v. Abramo, 201 Md. 339, 93 A.2d 546 (1953); Maddox v. Maddox, 151 Neb. 626, 38 N.W.2d 547 (1949); Nastasi v. Moore, 7 Misc.2d 226, 156 N.Y.S.2d 521 (1956); Stover v. Flack, 41 Barbour (N.Y.) 162 (1862); Wiger v. Carr, 131 Wis. 584, 111 N.W. 657, 11 L.R.A., N.S., 650 (1907); Stack v. Roth Bros. Company, 162 Wis. 281, 156 N.W. 148, Ann.Cas. 1918C 741 (1916). See also Annots., 7 Ann.Cas. 930-932 (1907), Ann.Cas. 1918C 744 (citing cases supporting this rule).
Nor does Code section 264(d), pertaining to contracts not to be performed within fifteen months, apply to the agreement for joint purchase of the stock. Miss. Code Ann. § 264(d) (1956). The shares were to be purchased as soon as possible or whenever they could be obtained. An oral agreement which might be performed within the statutory period is not in violation of this statute. Hazell Machine Co. v. Shahan, 249 Miss. 301, 161 So.2d 618 (1964); Morgan v. Jackson Ready-Mix Concrete, 247 Miss. 863, 157 So.2d 772 (1963); 49 Am.Jur. Statute of Frauds § 25 (1943).
The agreement for joint purchase was simple and sufficiently definite for enforcement by an equity court. Appellant would share equally with appellee in the acquisition of the stock, and she would pay whatever price appellee agreed upon with Harrison. There is no issue pertaining to appellee paying a ridiculously exorbitant price for the stock. At $5,000 a share, he bought it at considerably below book value. Determination that an agreement is sufficiently definite is favored in the courts, so as to carry out the reasonable intention of the parties if it can be ascertained. A contract is sufficiently definite if it contains matter which will enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence. Having found a contract to have been made, an agreement should not be frustrated where it is possible to reach a reasonable and fair result. Corbin, Contracts § 95 (1963); 17 Am.Jur.2d Contracts §§ 75-77 (1964); cf. Russell v. Douglas, 243 Miss. 497, 504, 138 So.2d 730 (1962). Moreover, there was consideration for the instant contract: mutual promises, and mutual forbearance by which neither would bid against the other. Dedeaux v. Young, 251 Miss. 604, 170 So.2d 561 (1965).
In summary, we hold that there was a contract between appellant and appellee to purchase for their joint benefit from Fred Harrison his stock in the Moretti corporation, and that this contract was sufficiently definite to be enforceable, and was not violative of any statute of frauds. Hence we do not reach or consider any additional issues, including whether the court should impose a constructive trust, based on all of the circumstances and relationships reflected in the record, in order to prevent unjust enrichment of appellee.
Accordingly, in the first consolidated case on appeal, which was No. 9447 in the chancery court, the decree of that court is reversed, and judgment is rendered here adjudicating that appellant is the beneficial *585 owner of one-half of the 18 1/2 shares of stock in Moretti-Harrah Marble Company, Inc., purchased by T.A. McGahey, Jr., from Fred Harrison, and appellee is directed to have Moretti transfer upon the books of the corporation to himself and appellant 9 1/4 shares to each, upon appellant paying appellee in cash one-half of the total amount paid by appellee to Fred Harrison for the 18 1/2 shares of stock.

CAUSE NO. 9483
This suit was brought by Mrs. Altie Jones and Edmonson, two of the trustees of the testamentary trust in the estate of T.A. McGahey, Sr. They were later joined by Mrs. Hortense McGahey as a complainant. It was against T.A. McGahey, Jr., to rescind the separation of twenty-seven shares of Moretti corporate stock from the trust estate and the return of the certificates to the trust estate under the joint control of the three trustees.
The will of McGahey, Sr., provided that, if any child died before termination of the trust, then the children of the trustee or executor so dying shall become additional executors or trustees of the trust. The trust estate owned one certificate for twenty-seven shares of Moretti stock. Mrs. Hortense McGahey, the widow, was given the income from the trust estate, and upon her death the trust property was bequeathed to the three children, Son, Altie, and Mrs. Harrison (after her death, her son, Edmonson). Son McGahey and Edmonson, a majority of the trustees, surrendered the certificate for twenty-seven shares and had Moretti issue three new certificates for nine shares each to Son, Edmonson and Altie in October, 1963. Previously, Son had obtained a written statement from his mother that the transfer met with her approval.
The chancery court held that the cancellation and surrender of the certificate for twenty-seven shares was in violation of the provisions of the will of McGahey, Sr.; that Mrs. Hortense McGahey did not have the benefit of independent counsel and advice before she signed the agreement in the presence of Son McGahey, who was in a fiduciary relation to her, and accordingly it cancelled the authority from her to distribute the stock. The court directed the parties to transfer the twenty-seven shares of stock to the trust estate, and prohibited the trustees from transferring or disposing in any way of the twenty-seven shares without approval of the court.
From this decree, McGahey, Jr. took a direct appeal, asserting that the court erred in refusing to permit the individual trustees to hold, as trustees, separate certificates for nine shares each, with the obligation to pay any income therefrom to Mrs. Hortense McGahey. Mrs. Jones and Edmonson appealed from that part of the decree prohibiting any sale or transfer of title of the twenty-seven shares without court approval. However, the chancery court was justified both in requiring return of the certificates to the trust estate, and prohibiting their transfer by the trustees without judicial authority. Although these testamentary trustees were given broad powers in management of the estate, they were also engaged in a controversy among themselves. The shares should remain in the estate, subject to supervision of the chancery court. Hence the decree in Chancery Cause No. 9483 is affirmed on both direct and cross-appeals.
In first consolidated case, being Chancery Cause No. 9447, reversed and judgment rendered here for appellant; in second consolidated case, being Chancery Cause No. 9483, affirmed on both direct and cross-appeals.
RODGERS, JONES, SMITH and ROBERTSON, JJ., concur.