613 So.2d 841 (1993)
Rudy POLK
v.
Bobbie Faye SEXTON.
No. 89-CA-186.
Supreme Court of Mississippi.
February 4, 1993.
*842 G. Milton Case, Smith & Case, Ridgeland, Steven H. Smith, Taylor Covington & Smith, Jackson, for appellant.
Alex A. Alston Jr., Patrick D. McMurtray, Alston Rutherford Tardy & Van Slyke, Robert M. Jones, Montgomery Smith-Vaniz & McGraw, Jackson, for appellee.
Before DAN M. LEE, P.J., and PITTMAN and BANKS, JJ.
PITTMAN, Justice, for the Court:
Bobbie Sexton instituted this action in the Chancery Court of Madison County against Rudy Polk seeking specific performance of an option to purchase commercial property or, in the alternative, for actual and punitive damages for breach of contract. After a trial on the merits, the lower court found that specific performance was not preferred and awarded actual damages of $61,719.47, punitive damages of $50,000.00, and attorney's fees of $5,000.00. Upon our review of the briefs and record, we order a remittitur of $30,000 of the actual damages awarded and affirm the award of punitive damages and attorney's fees contingent upon Sexton's acceptance of the remittitur.

I.
Rudy Polk constructed a two-story building at 6712 Old Canton Road in which he leased commercial space. The two-story structure contained twelve individual rental units of varying sizes and was known as the Village Square commercial property.
In February of 1986, Rudy Polk and Bobbie Sexton entered into a lease agreement for property located in the Village Square complex. The agreement stipulated that Bobbie Sexton, who intended to use her rented space for a styling salon, could make improvements to Unit Three which consisted of an unfinished, 1000 squarefoot space. Moreover, the contract provided for a monthly rental obligation of $800.00 and contained an option to purchase, during the first year of the agreement, at the stated price of $65,000.00. If the option to purchase were to be exercised, all rental payments made by Sexton would be credited towards the purchase price.
Upon executing the lease agreement of February 1986, Bobbie Sexton employed the services of a local contractor to begin making improvements to Unit Three. Contractor Gary Roberts installed sheetrock, added walls, constructed cabinets, installed electrical and plumbing fixtures, built shelves and installed mirrors. The leased unit, which began with sheetrock walls and a concrete floor, was then carpeted and wall-papered with Bobbie Sexton adding partitions, track lighting, styling chairs and furniture for use by her customers. Sexton *843 testified that she would never have made these extensive improvements if she had not intended to one day own Unit Three.
Regarding the agreement giving Sexton the option to purchase, Sexton testified that from the very beginning, she informed Rudy Polk that she would be buying Unit Three. She stated that she related her intentions to Polk at the time of the signing of the lease agreement, and then in the summer of 1986, and also in November of that year. Each time, Rudy Polk would state that the parties had plenty of time to execute the sale papers and for Sexton not to worry. Finally, in February of 1987, Polk told Bobbie Sexton that he would not be able to sell Unit Three because the bank would not allow him to do so. Sexton asked Polk which bank he was dealing with but Polk refused to disclose this information.
Rudy Polk testified regarding the above events by stating that he always intended to sell Unit Three to Bobbie Sexton. He related that upon learning that Sexton intended to exercise her option to purchase, he went to see banking representative Frank Hart at Trustmark National Bank in Jackson. According to Polk, Hart told him that Trustmark would not approve the sale of an individual unit in the Village Square complex. Hart allegedly stated that at least seventy percent of the units would have to be sold before any portion of Polk's mortgage would be reduced. Polk denied telling Bobbie Sexton that he would not sell Unit Three because the property's value had doubled.
Contradicting the testimony given by Rudy Polk was the evidence elicited from witnesses Frank Hart and Dan Farnham.
Frank Hart testified that he was the vice-president of the Real Estate department of Trustmark National Bank. He stated that in 1986, Rudy Polk came to his office and asked about establishing a condominium association for Village Square. Hart related that he gave Polk a "broad brush" summary of the requirements for such a venture and Polk, thereafter, left. Frank Hart testified that he never denied Polk's request to approve the sale of Unit Three because Polk never asked him to approve anything.
Real estate agent Dan Farnham testified that he drafted the lease agreement executed between Rudy Polk and Bobbie Sexton. He stated that in February of 1987, Polk contacted him and asked him to prepare an information sheet that he could take to the bank regarding the sale of Unit Three. Farnham stated that after reviewing the data sheet  which showed the original sale price minus the rental payments made by Sexton  Rudy Polk stated that he had made a bad business decision with regard to Unit Three and that the property was now worth "twice as much."
After considering the evidence offered by both parties, Chancellor Ray Montgomery issued his written opinion awarding the following actual damages to Bobbie Sexton:

 Rent and deposit $19,200.00
 Additional rent $ 1,840.00
 Out of pocket exp. $ 7,124.13
 Moving in costs $31,586.24
 Advertising $ 1,449.10
 Total Actual Damages $61,719.47

Chancellor Montgomery also found that punitive damages of $50,000.00 and attorney's fees of $5,000.00 were to be awarded in this cause.
Rudy Polk perfected this appeal.

II.
Chancellor Montgomery ruled that the lease agreement, with the option to purchase, was sufficiently definite so as to carry out the intentions of the parties and create a binding contract. This finding is consistent with general principles of contract law providing that a trial court is to give effect, if possible, to the mutual intentions of the parties to a contract. In Hicks v. Bridges, 580 So.2d 743 (Miss. 1991), this Court stated as follows:
It is a well settled principle that this Court favors a determination that an agreement is sufficiently definite, so as to carry out the reasonable intention of the parties. Busching v. Griffin, 542 *844 So.2d 860 (Miss. 1989); Jones v. McGahey, 187 So.2d 579 (Miss. 1966). In Busching, the Court said:
A contract is sufficiently definite if it contains matter which would enable the court under proper rules of construction to ascertain its terms, including consideration of the general circumstances of the parties and if necessary relevant extrinsic evidence. Having found a contract to have been made, an agreement should not be frustrated where it is possible to reach a reasonable and fair result.

Id. 542 So.2d at 863 (quoting Jones 187 So.2d at 584).
Hicks, 580 So.2d at 746.
We agree with the lower court that an enforceable contract was created between the parties in February of 1986. When this agreement was breached, the injured party was indeed entitled to recover the damages reasonably flowing from the wrongful conduct. However, we cannot agree with the quantum of actual damages awarded by the court below. Many of the items included in the chancery court's ruling do not qualify as an element of compensatory damages that may be awarded under these facts. Therefore, we find that the ruling of the court with regard to actual damages was based on speculation and uncertainty and we are required to modify that portion of the judgment today.

A.
The law is settled that a party must prove that he is entitled to an award of damages to a "reasonable certainty." Lovett v. E.L. Garner, Inc., 511 So.2d 1346, 1353 (Miss. 1987). When we review the evidence below, we find first that the lower court awarded Bobbie Sexton more than $38,000.00 for "moving in costs" and "out of pocket" expenses. There is no doubt that many of the items included in these two categories were losses sustained by Bobbie Sexton as a result of Polk's contractual breach. However, there are a number of items listed that do not qualify as an element of "loss" in an action for breach of contract.
Under the categories of "moving in costs" and "out of pocket" expenses, Bobbie Sexton listed many articles that became an integral part of Unit Three and could not be removed without damaging either the item or the building. We agree with the trial court that the items that became a part of the realty are recoverable in an action such as this. However, there were a number of articles, such as furniture, office supplies, a cash register, and salon supplies, that did not become a component part of the rental unit. These items could be easily removed by Sexton and used in another facility or styling shop. In light of this fact, the chancellor should not have required Rudy Polk to pay for these articles as an element of damage for breach of contract. When the lower court did so, it breached its duty to see that all elements of the damage award were proven to a reasonable certainty.

B.
As another element of actual damages, the lower court awarded Bobbie Sexton all rental payments made by her from the date of the lease agreement until the time of trial. Rudy Polk suggests that the chancellor's ruling on this point is erroneous because it placed Sexton in a better position than she otherwise would have been in by allowing her the exclusive use and occupancy of Unit Three without having to pay for it. We are inclined to agree.
It is well established that when a person has been injured by a breach of contract, he is entitled to be justly compensated and is to be made whole by the trial court. However, it is never contemplated that the injured party be placed in a better position than he otherwise would have been in if the contract had been performed. In McDaniel Bros. Construction Co. v. Jordy, 195 So.2d 922 (Miss. 1967), this Court stated this principle as follows:
The fundamental principle of the law of damages is compensation for injuries sustained. One injured by a breach of contract is entitled to a just and adequate compensation and no more. "The law will not put him in a better position than *845 he would be in had the wrong not been done or the contract not been broken." 22 Am.Jur.2d Damages § 13 (1965).
Id. at 925.
It is clear that Bobbie Sexton is entitled to an award of actual damages in this cause. We are mindful of such damages as the costs of Sexton to relocate her shop and any lost profits during the period of relocation. However, these damages, as with all damages, must be proven to a reasonable certainty and must not place the injured party in a better position than they otherwise would have been in.
Regarding the award of actual damages in this cause, at the time of trial, Bobbie Sexton had the sole use and occupancy of Unit Three in the Village Square complex for more than two years. To now hold that Sexton does not have to pay for this period of possession would indeed place her in a better position than she would be in if the contract had been performed.

III.
Rudy Polk finally suggests that the chancery court was in error when it awarded punitive damages and attorney's fees to Bobbie Sexton. Polk would show that the chancellor's finding of a "gross and willful breach of the lease agreement" was not supported by fact or law and should be reversed on appeal. We disagree.
The law in Mississippi is settled that punitive damages are recoverable in an action for breach of contract. Fought v. Morris, 543 So.2d 167, 173 (Miss. 1989). Further, this Court has established that attorney's fees can be awarded in a punitive damages case. Grisham v. Hinton, 490 So.2d 1201, 1206 (Miss. 1986). Therefore, we are required to review the jurisprudence and the record in this matter to determine if punitive damages were indeed required.
In Fought, this Court stated that punitive damages were recoverable in a breach of contract action if the breach was occasioned by intentional abuse or conduct. Specifically, this Court held:
Punitive damages are recoverable in breach of contract cases "where such breach is attended by intentional wrong, insult, abuse, or such gross negligence as amounts to an independent tort." Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 465-66 (Miss. 1983); Progressive Casualty Ins. Co. v. Keys, 317 So.2d 396, 398 (Miss. 1975). Punitive damages, however, are appropriate "only in extreme cases," Bryant v. Alpha Entertainment Corp., 508 So.2d 1094, 1098 (Miss. 1987); Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985); Tideway, supra, at 460, and should be awarded only with "caution and within narrow limits." Bryant, supra, at 1098; Jackson v. Johns-Manville Sales Corp., 727 F.2d 506, 526 (5th Cir.1984) citing Consolidated American Life Ins. Co. v. Toche, 410 So.2d 1303, 1304-05 (Miss. 1982).
... The award of punitive damages and the amount thereof, however, is within the discretion of the trier of fact. McGowan v. Estate of Wright, 524 So.2d 308, 310 (Miss. 1988); South Central Bell v. Epps, 509 So.2d 886 (Miss. 1987).
Fought, 543 So.2d at 173.
At trial, witnesses Dan Farnham and Frank Hart contradicted the testimony given by Rudy Polk. Dan Farnham stated that Polk expressed to him that he had made a bad business decision with regard to the sale of Unit Three and that the property was now worth "twice as much." Polk testified that he told Hart that he could not sell Unit Three. In fact, Hart stated that Polk never asked him to evaluate any piece of real estate for possible sale to a third party. In light of this evidence, this Court must agree with the finding of a "gross and willful" breach of contract on the part of Rudy Polk. We are unable to find any support for Polk's claim that he could not sell Unit Three of the Village Square Complex to Bobbie Sexton. Therefore, we affirm the ruling of the chancery court with regard to punitive damages and attorney's fees.

IV.
This Court has statutory authority to impose additurs and remittiturs when it deems necessary. Miss. Code Ann. § 11-1-55 (Rev. 1991) provides:
The supreme court or any other court of record in a case in which money damages *846 were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that the damages are excessive or inadequate for the reason that the jury or trier of facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence. If such additur or remittitur be not accepted then the court may direct a new trial on damages only... .
Leach v. Leach, 597 So.2d 1295, 1297 (Miss. 1992); Motorola Communications and Electronics, Inc. v. Wilkerson, 555 So.2d 713 (Miss. 1989).
Sexton may not legally recover for a number of articles, such as furniture, office supplies, the cash register, and other salon supplies, which did not become components of the rental unit; these items could be easily removed and used in another facility. Further, Sexton was not entitled to recover the rents she paid while an occupant of the unit. After a thorough review of the record and disallowing all non-recoverable items, we find a remittitur of $30,000.00 in actual damages is warranted. It is therefore ordered that the award of punitive damages and attorney's fees be affirmed conditioned upon Sexton's acceptance of a remittitur of actual damages in the amount of $30,000.00. In the event Sexton declines to accept the remittitur, the case is remanded in whole for a new trial on damages.
REMITTITUR OF ACTUAL DAMAGES IN THE AMOUNT OF $30,000 ORDERED; PUNITIVE DAMAGES AND ATTORNEY'S FEES AWARDS AFFIRMED ON CONDITION OF ACCEPTANCE OF REMITTITUR WITHIN FIFTEEN (15) DAYS OF THE DATE OF THIS DECISION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, BANKS, McRAE, ROBERTS and SMITH, JJ., concur.