# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 97-CA-00534 COA

GLENN ISHEE                                                      APPELLANT

v.

THE PEOPLES BANK                                                 APPELLEE

DATE OF JUDGMENT:              04/10/97
TRIAL JUDGE:                   HON. JERRY OWEN TERRY, SR.
COURT FROM WHICH APPEALED:     HARRISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:        WOODROW W. PRINGLE III
ATTORNEY FOR APPELLEE:         HENRY LAIRD
NATURE OF THE CASE:            CIVIL - CONTRACT
TRIAL COURT DISPOSITION:       DIRECTED VERDICT GRANTED TO
                               DEFENDANT/APPELLEE
DISPOSITION:                   AFFIRMED - 11/24/98
MOTION FOR REHEARING FILED:    12/4/98
CERTIORARI FILED:              2/19/99
MANDATE ISSUED:                5/27/99

BEFORE McMILLIN, P.J., COLEMAN, AND PAYNE, JJ.

PAYNE, J., FOR THE COURT:

### PROCEDURAL POSTURE AND ISSUE PRESENTED

¶1. This case comes to this Court on appeal from a directed verdict following the presentation of the appellant's case-in-chief in favor of the appellee, Peoples Bank, by the Circuit Court of Harrison County, the Honorable Jerry O. Terry, presiding. Feeling aggrieved, the appellant seeks relief from this Court raising the following issue:

> **I. WHETHER THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF PEOPLES BANK**.

¶2. Upon careful review of the record and applicable precedents and thoughtful consideration of the briefs

submitted by both parties, we find no error in the trial court's direction of verdict for Peoples Bank. Accordingly, we affirm.

## FACTS

¶3. In 1985, the Mississippi State Port Authority at Gulfport leased to Donald Mills the property on which Gulfport Seafood & Ice Co. was situated. In 1991, the corporation filed for protection from its creditors in the U.S. Bankruptcy Court for the Southern District of Mississippi. C. Thomas Anderson was appointed trustee (TIB). Appellant, Glenn Ishee, was an employee of the bankrupt corporation and served as its general manager through the bankruptcy proceedings. On March 10, 1992, Thomas, in his capacity as trustee, assigned the corporate interest in the 1985 lease to the Peoples Bank.

¶4. On February 25, 1992, prior to the assignment of the lease to the appellees by the TIB, Peoples Bank entered into an sales agreement with James and Patria Maulden to sell the Bank's leasehold interest in the aforementioned premises to the Mauldens for $1,000,000. The terms of the agreement called for an earnest money payment of $100,000 by March 16, 1992, and a final closing for the remaining balance due on May 15, 1992. Subsequent to entering this purchase option agreement with the Mauldens, Peoples entered into a month-to-month, at-will lease agreement on March 19, 1992 for the same premises with Ishee for $3,000 per month. The lease agreement contained a ten day termination clause applicable to both parties. On May 4, 1992, Peoples Bank, upon learning that the Mauldens would close their purchase of the subject property on May 15, 1992, terminated Ishee's lease. Ishee testified that Peoples led him to believe that his lease would not be terminated until at least the end of the 1992 shrimping season and possibly not until the end of the 1993 season.

¶5. On May 20, 1992, Ishee filed his complaint in this matter seeking, *inter alia*, lost profits because of the premature termination of the lease by Peoples before the beginning of the shrimping season, as well as damages for negligent misrepresentation by the agents of Peoples regarding the operation of the ten day termination clause.

¶6. After a two day presentation of Ishee's case-in-chief, the trial court directed a verdict in favor of Peoples Bank in an order dated April 10, 1997. From this order, Ishee timely filed this appeal.

## ANALYSIS

### I. WHETHER THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF PEOPLES BANK.

¶7. The appellant, in his only assignment of error, alleges that the trial court erroneously directed a verdict for the appellee in this matter. We disagree and now affirm the trial court's decision. The motion for directed verdict is controlled by M.R.C.P. 50(a), the comments to which provide "the [trial] court should look solely to the testimony on behalf of the opposing party; if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for the party, the case should not be taken from the jury." Our standard of review with regard to directed verdicts and peremptory instructions is the same and well-settled. In reviewing motions for a directed verdict, this Court "must consider the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences that may be drawn therefrom; unless the plaintiff's evidence is so lacking that reasonable jurors could not reach a verdict for the plaintiff, . . ." the trial court should not direct a verdict. ***Wilner v. Miss. Export R. Co.*, 546 So. 2d 678,**

**681 (Miss. 1989);** *Hall v. Mississippi Chemical Exp. Inc.*, **528 So. 2d 796, 798 (Miss. 1988);** *Upton v. Magnolia Elec. Power Ass'n*, **511 So. 2d 939, 943 (Miss. 1987).** Likewise, it is established that the trial judge "should submit an issue to the jury only if the evidence creates a question of fact concerning which reasonable jurors could disagree." *Vines v. Windham*, **606 So. 2d 128, 131 (Miss. 1992);** *Pace v. Financial Sec. Life of Miss.*, **608 So. 2d 1135, 1138 (Miss. 1992**). These standards apply to each element of a claim. *McGory v. Allstate Ins. Co.*, **527 So. 2d 632, 635 (Miss. 1988**). Accordingly, in the case at bar, we must look to the elements of a claim for alleged lost profits resulting from the termination of the lease and the elements for a claim of negligent misrepresentation. We must determine if there was favorable evidence in favor of Ishee and if that evidence, coupled with the reasonable inferences flowing from that evidence, presented a jury question.[(1)]

¶8. First, with regard to Ishee's claim of lost profits, we look to see the nature of the claim--whether it was reasonably certain or mere speculation. In order to recover damages for lost profits based on breach of contract, the claim must be established with reasonable certainty. *Polk v. Sexton*, **613 So. 2d 841, 844 (Miss. 1993);** *Lovett v. E.L. Garner, Inc.*, **511 So. 2d 1346, 1353 (Miss. 1987).** The unique nature of each contract leaves claims for lost profits to be determined on a case by case basis, as there are no concrete elements of such a claim aside from their establishment to a reasonable certainty. *Lovett*, **511 So. 2d at 1353.**

¶9. In Mississippi, a commonly recognized method of establishing lost profits is by relying on past earnings, as Ishee did in attempting to establish this claim. *Kasier Inv. Inc. v. Linn Agriprises, Inc.,* **538 So. 2d 409, 416 (Miss. 1989);** *Sanders v. Dantzler*, **375 So. 2d 774, 777 (Miss. 1979).** However, we must take care that the past profits of the entity are comparable to the likely future profits of the entity, else we are left with a calculation of future profits based on forbidden conjecture and speculation. *Polk*, **613 So. 2d at 844.**

¶10. In this case, Ishee presented evidence of the past profits earned by Gulfport Seafood & Ice Co., Inc. in 1991 as his basis for his claim of lost profits in this case stemming from the termination of his lease by Peoples. Given the fact that the commercial enterprise known as Gulfport Seafood & Ice Co., Inc. sought bankruptcy protection in 1992, it seems relatively certain that the profits set forth in the 1991 statements of that entity may be misleading given the ultimate outcome of that entity. Ishee was an employee of the bankrupt corporation from 1988 until he was appointed general manager by the TIB, and he testified that he "felt" it was profitable. While we do not necessarily doubt Mr. Ishee's feelings with regard to the profitability of the former Gulfport Seafood & Ice, we cannot allow Ishee's feelings regarding profitability or the profits provided in an earnings statement for one year before the bankruptcy of the former entity to serve as the foundation for an award of loss of profits. Seeing that this was the only evidence offered by Ishee in this regard, we sustain the trial court's characterization of Ishee's claim for lost profits as speculative.

¶11. Second, with regard to Ishee's claim of negligent misrepresentation by the agents of Peoples Bank, we turn to requisite elements for a successful claim of negligent misrepresentation. The successful claim for oral misrepresentation in a contractual agreement must demonstrate five requirements by a preponderance of the evidence: 1) a misrepresentation or omission of a fact; 2) that is material or significant; 3) a failure to exercise the degree of diligence and care that is generally expected from a similarly situated party; 4) reasonable reliance on the misrepresentation or omission by the injured party; and 5) that such reasonable reliance was the proximate cause of damages suffered by the injured party. *R.C. Const. Co., Inc. v. National Office Sys., Inc.,* **622 So. 2d 1253, 1255 (Miss. 1993);** *Berkline Corp. v. Bank of*

*Mississippi*, 453 So. 2d 699, 702 (Miss. 1984).

¶12. Based on our review of the lease agreement with an eye to the four corners of the document, it is clear that Ishee failed to satisfy the first element of a negligent misrepresentation claim. The lease plainly calls for a periodic, month-to-month, at-will arrangement, terminable on ten days notice by either Peoples or Ishee. There was no absolute guarantee issued by Peoples or its agents regarding when the lease may or may not be terminated. Ishee testified that he did not believe that the termination clause was effective until after the shrimping season. However, we find nothing in the document suggesting any limitation on the termination clause. Further, Ishee was evidently aware of the clause as he, through an attorney, unsuccessfully attempted to negotiate a longer notice period. Ishee's claim is also fatally flawed by his own testimony that he was aware of the purchase option to the Mauldens when he entered the lease with Peoples but made no attempt to contact the Mauldens until after Peoples's agent, Bob Tucci, asked him to do so.

¶13. Based on the plain language of the lease agreement and the testimony offered by Ishee, we believe that he failed to make his case in this regard. Finding that he failed as to the first essential element of a negligent misrepresentation claim, we need not address the remaining four elements of a successful claim.[2] The judgment of the trial court is sustained in this regard.

¶14. **THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED AGAINST THE APPELLANT.**

**BRIDGES, C.J., McMILLIN, P.J., COLEMAN, DIAZ, HINKEBEIN, KING, AND SOUTHWICK, JJ., CONCUR. THOMAS, P.J., AND HERRING, J., NOT PARTICIPATING.**

1. We do not separately address the issue of the lease agreement other than to note that Ishee was clearly aware of the terms of the lease, specifically the ten day termination clause, as he attempted, through counsel, to renegotiate this term of the contract.

2. Additionally, since we find that Ishee failed to present sufficient evidence for a jury question in this case, the issue of damages is moot and we do not address the same here.