# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 15, 2010

Lyle W. Cayce
Clerk

No. 10-60116
Summary Calendar

Mississippi Phosphates Corporation

Plaintiff–Appellee

v.

Analytic Stress Relieving, Incorporated

Defendant–Appellant

Appeal from the United States District Court
for the Southern District of Mississippi
1:07-CV-1140

Before WIENER, PRADO, AND OWEN, Circuit Judges.

PER CURIAM:[*]

This appeal arises from a jury trial where Mississippi Phosphates Corporation (MPC) and Furnace & Tube Service, Inc., MPC's contractor, sued Analytic Stress Relieving Corp., Furnace & Tube's subcontractor, for damages incurred after a failed attempt to repair a boiler. Analytic Stress raises four issues on appeal: whether the district court abused its discretion in (1) failing to grant Analytic Stress a remittitur on the excessive damages awarded when MPC

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-60116

failed to prove damages with reasonably certainty as required by Mississippi law, (2) failing to exclude expert testimony by Dr. Kendall Clarke, (3) prohibiting Analytic Stress from eliciting testimony that MPC had settled its case against former co-defendant F&T, and (4) refusing to substitute MPC as the real party in interest in the breach of contract claim against Analytic Stress. The district court did not abuse its discretion. We affirm the district court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff–Appellee Mississippi Phosphates Corporation (MPC) is a manufacturer and purveyor of diammonium phosphate fertilizer (DAP). On July 2007, MPC discovered that No. 1 Waste Heat Boiler at one of its plants needed repair and contracted Furnace & Tube Service, Inc.(F&T) to repair it with an agreed completion date of August 2, 2007. F&T subcontracted Plaintiff–Appellant Analytic Stress Relieving, Inc. (Analytic Stress) to heat-treat the welds joining the new tube sheets to the boiler. In the course of treating the welds with extreme heat, both new tube sheets warped because the metal to be heated was not a uniform, one-inch thickness as the repairers assumed. The warping led to a delay in the repair of the boiler, which prevented MPC from producing DAP during this downtime. MPC sued F&T and Analytic Stress for lost profits from DAP sales and additional expenses attributable to the downtime caused by the warped sheet, and also sued F&T for damages from additional leaks and downtime after the boiler was returned to service. F&T in turn filed a cross-claim against Analytic Stress for labor, materials, and equipment that F&T had paid for in replacing the warped tube sheets.

Just before trial was to begin in September 2009, MPC, F&T, and F&T's primary insurance carrier, The Gray Insurance Company (Gray), reached a settlement agreement. In the agreement: Gray Insurance and F&T agreed to pay MPC a combined $4.2 million; F&T and Gray continued to deny all liability with respect to the warped tube sheets; and F&T agreed to assign to MPC all of

No. 10-60116

F&T's rights and claims against Analytic Stress and its insurers. The district court severed the leak claims from the claims concerning the warped tube sheets at MPC and F&T's request and granted a week continuance at Analytic Stress's request. The district court also realigned F&T from defendant to plaintiff.

Analytic Stress moved to substitute MPC as the real party of interest in F&T's breach of contract claim against Analytic Stress before jury trial began on October 5, 2009 and objected again during trial to the district court allowing F&T appear as a party with separate counsel given the assignment of the chose in action. The district court denied the request, overruled the objection, and allowed MPC to prosecute the negligence claim against Analytic Stress and F&T to prosecute the breach of contract claim, each with its own separate counsel.

On October 6th, MPC made an ore tenus motion to exclude testimony regarding the settlement agreement. Analytic Stress protested. The district court prohibited the parties from eliciting testimony about the settlement agreement or amount, but allowed the parties to elicit testimony that F&T was previously a defendant in the case, and that F&T had assigned any recovery from the breach of contract claim against Analytic Stress to MPC.

During the trial, Analytic Stress objected to the testimony given by MPC's metallurgy and heat treatment expert, Dr. Kendall Clarke, that Analytic Stress's post-weld heat treatment procedures did not comply with the industry standard of care. Analytic Stress objected on the ground that Clarke did not have the requisite practical knowledge or specialized education to testify on post-weld heat treatment procedures. The district court overruled the objection.

Trial concluded on October 9, 2009. The jury returned a verdict in favor of MPC in the amount of $3,101,506.36 for the damages caused by the warped tube sheets, apportioning sixty percent of the liability to F&T and forty percent to Analytic Stress. In F&T's cross claim against Analytic Stress, the jury found that Analytic Stress had breached its contract, but awarded zero damages. The

No. 10-60116

district court then entered the final judgment in favor of MPC against Analytic Stress in the amount of $1,240,602.55.

On October 23, 2009, Analytic Stress filed a Renewed Motion for Judgment as a Matter of Law and Alternative Motions for Remittitur or New Trial. Analytic Stress requested the district court exclude the testimony of Dr. Clarke regarding whether Analytic Stress had breached its duty of care in its post-weld heat treatment.  In the alternative, Analytic Stress requested the district court grant a remittitur of the entire amount of damages alleged by MPC as lost profits because MPC had failed to prove those losses with reasonable certainty. Also in the alternative, Analytic Stress requested that the district court grant a new trial because of the unfair prejudice and irreparable harm caused by allowing both MPC and FTC remain as parties and allowing both MPC and FTC to have separate counsel and prohibiting the parties from disclosing that MPC settled its claims against F&T.  The district court denied  these motions on January 27, 2010.  Analytic Stress timely appealed.

## II.  DISCUSSION

Analytic Stress raises four issues on appeal.  Analytic Stress argues that the district court erred by (1) failing to grant Analytic Stress a remittitur on the excessive damages awarded when MPC failed to prove damages with reasonably certainty as required by Mississippi law, (2)  failing to exclude expert testimony by Dr. Clarke, (3) prohibiting Analytic Stress from eliciting testimony that MPC had settled its case against former co-defendant F&T, and (4) refusing to substitute MPC as the real party in interest in the breach of contract claim against Analytic Stress.  We address each issue in turn.

### A.    Remittitur

#### 1. Standard of Review

We review a denial of new trial or remittitur for abuse of discretion. *Foradori v. Harris*, 523 F.3d 477, 497–98 (2008).  In *Gasperini v. Center for*

*Humanities, Inc.*, 518 U.S. 415 (1996), the Supreme Court held that "in an action based on state law but tried in federal court by reason of diversity of citizenship, a district court must apply a new trial or remittitur standard according to the state's law controlling jury awards for excessiveness or inadequacy, and appellate control of the district court's ruling is limited to review for 'abuse of discretion'" *Foradori*, 523 F.3d at 497–98 (citations omitted); *see also Gasperini*, 518 U.S. at 419, 438–39 (citations omitted).  In accordance with *Gasperini* and our precedent in *Foradori*, "we must review the district court's decision applying the . . . Mississippi new trial/remittitur standard to the evidence in this case to determine whether the district court abused its discretion." *Foradori*, 523 F.3d at 498.  Because "trial judges have the unique opportunity to consider the evidence in the living courtroom context, . . . while appellate judges see only the cold paper record . . . [, w]e must give the benefit of every doubt to the judgment of the trial judge." *Gasperini*, 518 U.S. at 438–39 (internal quotations and citations omitted); *Foradori*, 523 F.3d at 498 (internal quotations and citations omitted).  "'When the trial judge has refused to disturb a jury verdict, all the factors that govern our review of his decision favor affirmance.'" *Foradori*, 523 F.3d at 504 (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)) .

## 2.    Discussion

Analytic Stress argues that the verdict was excessive and contrary to the weight of credible evidence because MPC failed to prove it had lost profits with reasonable certainty.  Analytic Stress thus argues that the jury award of $3,097,540 must be remitted.  Given the exceedingly deferential standard of review for denial of new trial or remittitur and the record presented here, we disagree and affirm the district court's decision to deny remittitur.

A remittitur is an "order awarding a new trial, or a damages amount lower than that awarded between those alternatives . . . ." BLACK'S LAW DICTIONARY

No. 10-60116

1321 (Bryan A. Garner, 8th ed. 1999). Thus, before a court may order a remittitur, "it must first determine that new trial is warranted." *Foradori*, 523 F.3d at 503. "Except in those cases in which it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there, the court may not reduce the amount of damages without giving the plaintiff the choice of a new trial, for to do so would deprive the parties of their constitutional right to a jury." *Id.* (citations omitted). *Id.* The statutory standard for granting a new trial or remittitur under Mississippi law provides:

> The supreme court or any other court of record in a case in which money damages were awarded may overrule a motion for new trial or affirm on direct or cross appeal, upon condition of an additur or remittitur, if the court finds that *the damages are excessive or inadequate for the reason that the jury or trier of the facts was influenced by bias, prejudice, or passion, or that the damages awarded were contrary to the overwhelming weight of credible evidence.* If such additur or remittitur be not accepted then the court may direct a new trial on damages only. If the additur or remittitur is accepted and the other party perfects a direct appeal, then the party accepting the additur or remittitur shall have the right to cross appeal for the purpose of reversing the action of the court in regard to the additur or remittitur.

MISS. CODE. ANN. § 11-1-55 (emphasis added). In the instant case, the appellant argues that the damages awarded were contrary to the weight of credible evidence. We will not reverse a jury verdict for excessiveness except on "'the strongest of showings.'" *Foradori*, 523 F.3d at 504. "'Absent an error of law, the reviewing court will sustain the amount of damages awarded by the fact finder, unless the amount is clearly erroneous or so gross or inadequate as to be contrary to right reason.'" *Vogler v. Blackmore*, 352 F.3d 150, 154 (5th Cir. 2003) (quoting *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 2003)).

Under Mississippi law, a party is entitled to damages for lost profits where it can "establish the claim with reasonable certainty, not based on mere speculation and conjecture." *Warren v. Derivaux*, 2007-CA-00905-SUPREME

6

COURT (¶ 20), 996 So.2d 729, 737 (Miss. 2008) (citing *Lovett v. E.L. Garner, Inc.*, 511 So.2d 1346, 1353 (Miss. 1987)).  Damages are only speculative when "the cause is uncertain, not when the amount is uncertain." *Warren*, 996 So.2d at 737 (citing *Parker Tractor & Implement Co. v. Johnson*, 98-CA-00457-SUPREME COURT (¶24), 819 So.2d 1234, 1239 (Miss. 2002).  "When loss is realized, but 'the extent of injury and the amount of damage are not capable of exact and accurate proof,' damages may be awarded if the evidence lays 'a foundation which will enable the trier of fact *to make a fair and reasonable estimate* of the amount of damages.'" *Warren*, 996 So.2d at 737 (quoting *Cain v. Mid-South Pump Co.*, 458 So.2d 1048, 1050 (Miss. 1984)) (emphasis in the original).

Here, there was adequate evidence from which the jury could have concluded that MPC lost profits because of the additional downtime caused by the warped tube sheets.  Because of the warped tube sheets, MPC's plant was down an extra sixteen days, and DAP production was stopped.  There was testimony, both from the selling and buying side of DAP transactions, that MPC could have sold all of the DAP that it could have produced during the sixteen-day downtime.  Rich Bohls, of Transammonia, Inc. (TRAMMO), MPC's largest customer, testified that the fertilizer market during August 2007 was very strong with high demand for DAP. Mr. Bohls went on to testify that TRAMMO would not only have purchased the 19,000 tons of DAP lost during the downtime, but as much as MPC could have provided.  Additionally, MPC presented evidence that TRAMMO was committed by contract to purchase up to 400,000 tons, plus or minus ten percent, of DAP from MPC during 2007.  Steve Wehmann, Vice President of Sales and Marketing of MPC, testified that TRAMMO only ended up buying approximately 320,000 tons during 2007.  Additionally, George Panzeca, Analytic Stress's own C.P.A. expert, stated that in August 2008, "demand was strong, and there was an ability for [MPC] to sell

the product." Jim Koerber, MPC's C.P.A., testified that he calculated the lost profits due to the 16 days of lost production to be $3,097,540. The evidence presented was adequate enough such that a jury could form a fair and reasonable assessment of the amount that MPC lost in profits.

Analytic Stress argues that given that there was 20,000 tons of DAP in inventory at the end of August that the amount awarded is contrary to right reason. However, given the evidence presented, it was up to the jury to weigh the evidence presented and decide whether the 20,000 tons in inventory was evidence that MPC had not lost profits during the downtime or whether that inventory was being saved to meet another contractual obligation, and thus that MPC could have sold the lost DAP to TRAMMO and still fulfilled its other orders. Given the adequacy of the evidence upon which a jury could calculate a damages award, and the fact that the amount awarded by the jury was not so clearly "erroneous or gross" as to be "contrary to right reason," we find that the district court did not abuse its discretion in deciding not to disturb the jury award and denying remittitur.

## B.    Expert Testimony

### 1.    Standard of Review

We review the district court's decision to admit or exclude expert testimony for abuse of discretion. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999); *Vogler*, 352 F.3d at 153. The district courts "enjoy wide latitude in determining the admissibility of expert testimony, and 'the discretion of the trial judge and his or her decision will not be disturbed on appeal unless 'manifestly erroneous'." *Watkins v. Telesmith, Inc.*, 121 F.3d 984, 988 (5th Cir. 1997) (quoting *Eiland v. Westinghouse Elec.*, 58 F.3d 176, 180 (5th Cir. 1995) (citation omitted)). Additionally, we likewise also apply the abuse-of-discretion standard to "the trial court's decisions about *how* to determine reliability." *Kumho*, 526 U.S. at 152 (emphasis added).

No. 10-60116

## 2.     Analysis

In pre-trial and post-trial motions and in the appeal before us, Analytic Stress argues that the district court erred in failing to exclude Dr. Clarke's testimony regarding his opinion that Analytic Stress did not comport with the industry standard of care.  Analytic Stress argues that Dr. Clarke's lack of practical experience or specialized academic knowledge in post-weld heat treatment disqualifies him as an expert in this area, and therefore that the district court abused its discretion in denying their motions and overruling their objection.  Given the "wide latitude" that district courts enjoy in determining the admissibility of expert testimony and the record presented here, we disagree.

Trial judges have a duty to act as gatekeepers to exclude irrelevant and unreliable expert testimony. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 589 & n.7 (1993). The trial judge's determination on the admissibility of expert evidence is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702.  The trial judge is charged with assessing the relevance and reliability of the expert testimony.  FED. R. EVID. 702; *Kumho*, 526 U.S. at 147. Rule 702 provides that a district court may allow an expert witness to testify if he has the requisite "knowledge, skill, experience, training *or* education." FED. R. EVID. 702 (emphasis added).  A witness can therefore be qualified as an expert "even though he lacks practical experience, provided that he has received suitable training or education or has otherwise gained the requisite knowledge

or skill." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 176–77 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994).

Though the district court recognized that Dr. Clarke had limited "practical, hands-on experience" with post-weld heat treatment, the district court nonetheless found him qualified on the basis of his education and his experience as a full-time practicing consulting engineer: an undergraduate, graduate, and doctorate degree in various areas of metallurgy and metallurgical engineering; four undergraduate courses that covered topics in heat treatment and two graduate courses that related specifically to heat treatment of metals; a course "which would get deeply into heat treatment" given that "heat treatment is a broad subject, for which post-weld is one portion"; and past consulting projects involving welding and high-temperature, thermal movement. We find no manifest error here in the district court's decision not to exclude Dr. Clarke's testimony on post-weld heat treatment and the industry standard of care, and thus affirm his decision to deny Analytic Stress's Renewed Motion for Judgment as a Matter of Law.

## C.    Settlement Testimony and Substitution of the Parties

Before trial, MPC, F&T, and F&T's primary insurer, Gray Insurance Company, reached a settlement agreement regarding two of four claims in the action. The three parties agreed to settle MPC's claim against F&T because its subcontractor, Analytic Stress, warped the tube sheets. Additionally, the three parties requested that the district court sever MPC's claim against F&T for welding leaks unrelated to the warping of the tube sheets; this motion was granted. This left MPC's negligence action against Analytic Stress for warping the tube sheets and F&T's breach of contract action against Analytic Stress for warping the tube sheets for trial. In the settlement agreement, F&T agreed "to assign to MPC all of F&T's rights, claims, etc. against Analytic and all of F&T's

rights, claims, etc. against Analytic's insurers." Analytic Stress brings two issues on appeal that concern the settlement agreement: (1) whether the district court abused its discretion in prohibiting Analytic Stress from eliciting testimony about the settlement, and (2) whether the district court abused its discretion in allowing F&T to appear as a real party in interest separate from MPC after it assigned its claims against Analytic Stress. We address each in turn.

### 1.    Settlement Testimony

Analytic Stress argues that the district court abused its discretion when it prohibited Analytic Stress from eliciting testimony because Mississippi substantive law as laid out in *Pickering v. Industria Masina I Traktora*, 740 So.2d 836 (Miss. 1999), requires the jury be told when a former co-defendant has settled the case against it. MPC argues that Analytic Stress has misinterpreted *Pickering*, and regardless, that it is inapplicable because Rule 408 regarding the exclusion of evidence concerning settlement applies instead. We agree with MPC that the Federal Rules of Evidence control. Under the Federal Rules of Evidence, the district court did not abuse its discretion in prohibiting the parties from eliciting testimony about the fact that the settlement agreement was reached while allowing Analytic Stress to elicit testimony that at some time F&T was a defendant in the case but no longer were at time of trial.

We reverse evidentiary decisions "only when the district court clearly abused its discretion and a party's substantial rights were affected." *Guerra v. N.E. Indep. Sch. Dist.*, 496 F.3d 415, 419 (5th Cir. 2007) (citing *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272, 277) (5th Cir. 1991)). "District courts are given broad discretion in rulings on the admissibility of evidence; we will reverse an evidentiary ruling only when the district court has clearly abused this discretion . . . ." *Rock*, 922 F.2d at 277. Even if there is an abuse of discretion, "the harmless error doctrine applies unless a substantial right of the

11

complaining party was affected." *Compaq Comp. Corp. v. Ergonome Inc.*, 387 F.3d 403, 408 (2004).

In a diversity action, federal courts apply federal procedural law, including the Federal Rules of Evidence. *Grenada Steel Indus., Inc. v. Ala. Oxygen Co., Inc.*, 695 F.2d 883, 885 (5th Cir. 1983); *see* FED. R. EVID. 101 & 1101(b) ("These rules apply generally to civil actions and proceedings . . . ."; *Washington v. Dep't of Transp.*, 8 F.3d 296, 300 (5th Cir. 1993). Rule 408 of the Federal Rules of Evidence provides that evidence of an offer or acceptance of a settlement may not be admitted "to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through prior consistent statement or contradiction . . . ." FED. R. EVID. 408(a). The rule goes further to say, however, that it does not require exclusion if the evidence is offered for a purpose not prohibited by section (a) of the rule, such as proving a witness's bias or prejudice. Rule 411 of the Federal Rules of Evidence provides that:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

FED. R. EVID. 411. Finally, Rule 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." FED. R. EVID. 411.

Here, there was no clear abuse of discretion. The court transcript from October 6, 2009 and the January 27, 2010 order denying Analytic Stress's motion for a remittitur or new trial indicates that the district court was concerned about jury confusion and prejudice should the jury learn about the existence of the settlement and the fact that F&T had liability insurance coverage. However, the

district court acknowledged that evidence of the existence of a settlement "would not necessarily be elicited for purposes of showing that the claims made against ASR are not appropriate or not valid." Thus, it seems the district court contemplated the testimony being used for purposes other than the prohibited purposes in Rule 408 and Rule 411. To allow the jury to evaluate the credibility of witness testimony from F&T witnesses while still excluding confusing or prejudicial information, the district court determined that the parties could only elicit information that F&T had previously been a defendant in the case and that it had assigned its claim against F&T to MPC. This ruling is within the limits provided by Rule 403, which allows the district court to limit or exclude evidence that is relevant but fraught with potential to prejudice or confuse jurors.

Analytic Stress argues that Mississippi substantive law, as laid out in *Pickering,* requires that the jury be affirmatively told when a former co-defendant has settled the case against it. We disagree. *Pickering* does not *demand* that the jury be told of a co-defendant's settlement. Instead, the Mississippi Supreme Court stated that Mississippi law "*allows* the jury to be informed of the existence of a settlement but not the amount of settlement." *Pickering*, 740 So.2d at 841 (emphasis added) (citing *Whittley v. City of Meridian*, 530 So.2d 1341, 1346 (Miss. 1988)). In fact, in that decision, the jury in *Pickering* was not informed of the settlement, and instead the trial judge reduced the amount awarded by the jury by the amount of the settlement by the other defendants. The Mississippi Supreme Court affirmed that procedure. Thus, we find that this line of argument has no merit. For the foregoing reasons, we affirm the district court's decision to exclude evidence that MPC had settled its case against F&T and to deny a new trial on this ground.

### 2.    Substitution of the Parties

Analytic Stress argues that the district court abused its discretion in allowing F&T to appear as a real party in interest with separate counsel from

MPC on the breach of contract claim after it had assigned its rights and claims against Analytic Relieving and its insurers to MPC.  We disagree.

We review the district court's denial of a motion to substitute the real party in interest for abuse of discretion.  *See Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 308 (5th Cir. 2001) (citations omitted).  Rule 17(a)(1) of the Federal Rules of Civil Procedure requires that actions "be prosecuted in the name of the real party in interest."  FED. R. CIV. P. 17(a)(1).  However, Rule 17(a)(1)(G) allows a party to sue in their own names without joining the person for whose benefit the action is brought if they are authorized by statute to do so.  Section 11-7-3 of the Mississippi Code allows actions to be prosecuted under the name of the original parties after an assignment of a chose in action:

> In case of a transfer or an assignment of any interest in such chose in action before or after suit brought, the action may be begun, prosecuted and continued in the name of the *original* party . . . . An "assignee" for purposes of this section includes both absolute assignees, with or without recourse, and conditional or limited assignees including assignees for collection purposes.

MISS. CODE §11-7-3 (emphasis added).  Additionally, Rule 25(c) of the Federal Rules of Civil Procedure provides that if "an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party."  FED. R. CIV. P. 25(c).

Given section 11-7-3 of the Mississippi Code allows an action to be prosecuted and continued in the assignor's name, nothing in Rule 17 prohibited the district court from allowing the action to be prosecuted and continued by of the original party.  Additionally, the express language of Rule 25 states that in the case of a transfer of interest, an action may be continued by the original party unless the court orders the transferee to be substituted.  When there is a transfer of interest in a pending action, Rule 25 gives the district court the

14

discretion to decide whether the assignee will substitute the original party. The district court decided not to substitute MPC in the breach of contract claim and to "allow Furnace & Tube to have separate counsel at trial to protect its own interest." Thus, we find no abuse of discretion and affirm the district court's decision to deny a new trial on this ground.

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.