881 So.2d 294 (2004)
Benny R. KNIGHT, Appellant
v.
Corey BROOKS, Appellee.
No. 2002-CA-02093-COA.
Court of Appeals of Mississippi.
March 16, 2004.
Rehearing Denied June 22, 2004.
Certiorari Denied September 2, 2004.
*295 Billy Parlin, Ocean Springs, attorney for appellant.
H. Benjamin Mullen, Pascagoula, attorney for appellee.
EN BANC.
MYERS, J., for the Court.
¶ 1. Benny R. Knight filed suit against Corey Brooks in the Circuit Court of Jackson County, Mississippi, seeking damages for personal injuries sustained in an automobile accident that occurred on May 3, 1994. After Knight presented his case and Brooks presented no evidence, the trial court entered judgment on the jury verdict that found for Knight but awarded zero dollars in damages. Knight moved for a new trial on the issue of damages which the trial court denied. From the denial of that motion, Knight appeals and raises the following two issues.

ISSUES PRESENTED
I. Did the trial court abuse its discretion by denying Knight's motion for a new trial on damages?
II. Was the verdict supported by the evidence or was it a result of bias, passion or prejudice on the part of the jury?

STATEMENT OF FACTS
¶ 2. The evidence reflects that on May 3, 1994, Knight and Brooks were involved in a collision of their motor vehicles. Knight was driving east on U.S. Highway 90 in Pascagoula, Mississippi. Knight stopped at an intersection when the traffic light turned red. After having been stopped for a short time, Knight looked in his rear-view mirror and noticed that a truck was coming toward him at a high rate of speed. Believing the approaching truck was not going to stop, Knight grabbed his steering wheel tightly and was struck from behind by a truck driven by Brooks. The collision totaled Knight's vehicle and Knight was forced to exit his vehicle through the sunroof. Knight called someone from his place of business to come and pick him up from the scene of the accident.
¶ 3. Knight went to visit his family physician, Dr. Kevin Cooper, on May 4, 1994, the day following the accident. However, the record indicates that Knight went to see Dr. Cooper for a complete physical, not for pains associated with the automobile accident. Knight admitted on cross-examination that he did not complain to Dr. Cooper about having pain or discomfort at that time and that he went to see Dr. Cooper about his heart problems. Dr. Cooper's medical records indicate no mentioning by Knight to Dr. Cooper about the accident. Dr. Cooper's report described *296 Knight's exam an "essentially unremarkable."
¶ 4. The record reflects that Knight waited six months after the accident before he went to see Dr. Christopher Wiggins, an orthopedic surgeon, in November 1994. Knight explained that the reason he waited six months to see Dr. Wiggins was because he had heart surgery in June of 1994. Given by deposition, Dr. Wiggins' testimony indicated that Knight complained at that time of pains in his left elbow. Knight mentioned the May 1994 accident to Dr. Wiggins. Dr. Wiggins testified that Knight suffered from an avulsed distal tendon and that given Knight's medical condition with heart problems, surgery was probably not an option of treatment. Dr. Wiggins testified that Knight sustained "fifteen percent permanent partial disability to the left upper extremity because of pain and loss of strength." According to Knight's direct examination, Dr. Wiggins prescribed medicine to treat his arm pain.
¶ 5. In July of 1995, Knight went to see Dr. Harry Danielson, a neurosurgeon, due to recurring headaches, back and neck pain. Knight had been a patient of Dr. Danielson in 1992 following another auto accident. In 1993, Dr. Danielson performed surgery on Knight to alleviate pain and disk injury resulting from the previous accident. Following a neurological exam performed by Dr. Danielson, an MRI X-ray and a myelogram, Dr. Danielson concluded that Knight suffered from a "herniated disk at the C5-6 level." After waiting several months to see if Knight's condition improved, Dr. Danielson suggested surgery in March of 1996. An anterior cervical disckectomy was performed by Dr. Danielson on April 5, 1996.
¶ 6. Dr. Danielson testified that his medical opinion was that Knight's accident on May 3, 1994, with Corey Brooks worsened the pre-existing back condition Knight suffered as a result of the 1992 accident. Dr. Danielson also testified that Knight had a "nine percent general physical impairment rating of the person as a whole for an anterior cervical disk fusion" but was not so disabled that he would need to resign from his job as CEO of his company.
¶ 7. Knight testified that he had post-accident medical bills totaling $23,000. Dr. Danielson stated that his charges for Knight's surgery and consultation were $7,650. Knight also testified that, because of chronic pain resulting from the auto accident, he could not participate in certain activities that he once enjoyed. Knight stated that due to pain he no longer could stand or ride in a car for long periods of time. However, Knight stated that he was still able to fish, go boat riding and work as owner of his own business.
¶ 8. After Knight presented his case, Brooks chose to rest and not to put on any evidence. The trial court instructed the jury to find for Knight. The jury returned a verdict for Knight but assessed his damages at zero dollars. The judgment on the jury verdict states, "We the jury find for the plaintiff, and assess his damages at $0.00." Knight moved for a new trial on the issue of damages. Knight argued that the jury verdict was inadequate, not supported by the evidence and a result of bias, prejudice or passion on the part of the jury. The trial judge denied Knight's motion for a new trial and Knight appeals this ruling.

STANDARD OF REVIEW AND LEGAL ANALYSIS
¶ 9. Knight raises two issues on appeal which are intertwined. We will consider the two issues together in order to better resolve the issues before the Court. Knight contends that the trial court erred when it denied his motion for a new trial. Motions for new trial challenge *297 the weight of the evidence. Mitchell v. Glimm, 819 So.2d 548, 551(¶ 6) (Miss.Ct.App.2002). The decision to grant or to deny a motion for new trial is within the trial judge's discretion. Trustmark Nat'l Bank v. Jeff Anderson Med. Ctr., 792 So.2d 267, 274 (¶ 17) (Miss.Ct.App.2000). The appellate court, when reviewing the trial judge's decision to deny a motion for new trial, views all evidence in a light most favorable to the nonmoving party. Id. This Court will reverse the trial judge's denial of a request for a new trial only when the denial amounts to an abuse of discretion. Whitten v. Cox, 799 So.2d 1, 13 (¶ 26) (Miss.2000).
¶ 10. Knight asserts two points of error with regard to the jury verdict of zero dollars. First, that the amount is inadequate and second, that the verdict is unsupported by the evidence and evinces bias, prejudice or passion on the part of the jury. Based on these assertions, Knight argues that the trial court should have granted him a new trial on damages. Proper bases for granting a motion for new trial are "when the verdict is against the overwhelming weight of the evidence, or when the jury has been confused by faulty jury instructions, or when the jury has departed from its oath and its verdict is a result from bias, passion, and prejudice." Gatewood v. Sampson, 812 So.2d 212, 222 (¶ 22) (Miss.2002) (citing Hamilton v. Hammons, 792 So.2d 956, 965 (Miss.2001)). Commonly, the sole proof of bias, prejudice or passion on the part of the jury is "an inference, if any, to be drawn from contrasting the amount of the verdict with the amount of the damages." Gatewood, 812 So.2d at 222 (citing Green v. Grant, 641 So.2d 1203, 1209 (Miss.1994)).
¶ 11. The trial judge gave the following peremptory instructions to the jury:
Instruction No. 4
The Court instructs the jury to return a verdict for the Plaintiff, Benny R. Knight.
Instruction No. 10
Your verdict should be written on a separate sheet of paper, need not be signed by anyone, and should be in the following form: "We the Jury, find for the Plaintiff and assess his damages at $."
Essentially, the trial court was directing a verdict for Knight while leaving the issue of damages for the jury's determination. When this Court reviews the action of the jury after the trial court has refused to grant a new trial on the question of damages, the question then becomes whether the verdict was either so excessive or inadequate as to shock the conscience and to indicate bias, passion and prejudice on the part of the jury, or, whether the jury failed to respond to reason. Wal-Mart Stores, Inc. v. Johnson, 807 So.2d 382, 392 (¶ 27) (Miss.2001).
¶ 12. In the case sub judice, there was actually no award of damages since the jury assessed them at zero dollars. This cannot be viewed as an inadequate award of damages, but instead as no award at all. Knight presented several expert witnesses at trial by way of their depositions, each stating that Knight suffered some injury from the accident. Knight testified that his medical bills total $23,000. Dr. Danielson testified that his bill for services rendered to Knight was $7,560. Dr. Danielson stated that Knight suffered from an aggravation of a pre-existing back condition due to the accident which resulted in surgery. Knight stated that he still continued to experience pain and discomfort at the time of trial, several years after the accident. Upon viewing the evidence presented at trial in the light most favorable *298 to Brooks, it is clear that Knight suffered some injury from this accident. The jury verdict is, therefore, against the overwhelming weight of the evidence and is reversed. We remand this case to the trial court for a new trial solely on the issue of damages.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF JACKSON COUNTY IS REVERSED AND THE CASE IS REMANDED FOR A NEW TRIAL ON THE ISSUE OF DAMAGES ONLY. ALL COSTS OF APPEAL ARE ASSESSED TO THE APPELLEE.
KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, AND CHANDLER, JJ., CONCUR. McMILLIN, C.J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY SOUTHWICK, P.J., BRIDGES, LEE, IRVING, MYERS, CHANDLER, AND GRIFFIS, J.
McMILLIN, C.J., CONCURRING:
¶ 14. I concur. I write separately to express some concern regarding the proper procedure in submitting contested issues to the jury when other relevant issues are either not contested or are determined by the trial court to be established as a matter of law. It has been my observation during my tenure on this Court that this problem arises with some degree of frequency in negligence claims for personal injury such as the one now before the Court and that, depending on the manner in which the jury is instructed, the path is left open for confusion on the part of the jury as to the scope of its authority and for uncertainty at the appellate level in assessing the responsiveness of the jury's verdict to the court's instructions.
¶ 15. A tort claim sounding in negligence has four essential elements. They are (a) a duty owed by the defendant to the plaintiff, (b) a breach of that duty, (c) a causal connection between that breach and an injury to the plaintiff, and (d) some loss or damage to the plaintiff arising out of that injury. Couch v. City of D'Iberville, 656 So.2d 146, 150 (Miss.1995). A directed verdict in favor of the plaintiff that does not reserve any element of a negligence claim for jury determination, therefore, contemplates, in the view of the trial court, that the evidence is such that a fair minded jury, viewing the evidence as a whole, could only conclude that the plaintiff has satisfactorily proven each of the elements of the claim. Ishee v. Peoples Bank, 737 So.2d 1011, 1013(¶ 7) (Miss.Ct.App.1998). In that situation, the sole issue for resolution by the jury  a matter which necessarily involves some measure of fact-finding discretion that cannot be usurped by the trial court  is the measure of the plaintiff's damage. This matter must be distinguished from the immediately preceding consideration of whether the fact that damage in some amount has occurred has been satisfactorily established.
¶ 16. There are situations where causation of the incident leading to the damage claim may be an uncontested matter though the issue of whether the plaintiff suffered any measurable damage as a result of the incident remains in dispute. In that situation, it would be inappropriate to direct a verdict for the plaintiff since proof of a compensable injury is an essential element of a plaintiff's verdict, and the failure to show such an injury by a preponderance of the evidence would properly result in a defendant's verdict just the same as if the proof failed on the threshold issues of the existence of a duty or a breach of that duty.
¶ 17. If the issue of whether a compensable injury has, or has not, been suffered is a matter unresolved at the conclusion of the proof, though all other essential elements *299 of the claim have either been confessed or are established as a matter of law, then appropriate instructions can be drafted that reflect this state of affairs and submit the unresolved issues to the jury for determination. However, that situation does not call for a directed verdict for the plaintiff.
¶ 18. In this case, the trial court directed the jury to return a verdict for the plaintiff. It may be that the court meant to inform the jury simply that the issue of "fault" in causing the accident was not a disputed issue but that the issues of both (a) the fact of injury and (b) the existence of compensable damages arising from the injury remained in dispute. For reasons I have already discussed, I conclude that a directed verdict for the plaintiff does not accomplish that purpose.
¶ 19. It is on that basis that I agree that a verdict of zero damages cannot be construed as being in accord with the trial court's instruction, given without qualification, to "return a verdict for the Plaintiff."
¶ 20. One appropriate means of reflecting that the issue of the fact of injury remains unresolved is to include the term "if any" at appropriate places within the body of the instructions. In McCary v. Caperton, the Mississippi Supreme Court considered the following instruction:
The court instructs the jury that if you find for the Plaintiff in assessing her damages you may take into consideration all evidence in reference to lost wages and income Plaintiff has suffered as a result of injuries if any sustained in the accident; and all evidence in reference to pain and suffering if any the Plaintiff has suffered or is reasonably likely to suffer in the future as a result of injuries sustained....
McCary v. Caperton, 601 So.2d 866, 869-70 (Miss.1992). In that case, the supreme court found the inclusion of the phrase "if any" to be reversible error since the court concluded that there was "unrefuted evidence that McCary was injured in the ... accident and that the injury resulted in loss." Id. at 870. In essence, the supreme court found error in the trial court's giving the jury the latitude to determine that no damage was suffered. A zero verdict for the plaintiff accomplishes that result and must, therefore, be seen as error when the trial court has concluded that the evidence shows otherwise as a matter of law.
¶ 21. It is my view that the state of the instructions in the case now before us puts it in essentially the same posture as McCary v. Caperton in that the instructions given in this case reflect a determination by the trial court that, not only was causation satisfactorily shown, but also that the fact of injury and resulting loss in some amount was established. Whether the trial court was wrong in reaching that conclusion is a different issue that is not before this Court.
¶ 22. There exists a roadmap in existing case law to differentiate between cases where duty, breach of duty, and a proximately caused injury are undisputed and one where duty and breach of duty are the only issues that are undisputed. It is important for the parties and the trial court to be mindful of this distinction and to carefully frame the instructions given the jury so as to properly instruct as to which issues are being submitted to them for determination and which ones they must accept as having been already resolved.
¶ 23. In this case, I think the court's instructions resolved all issues up to and including the fact that the plaintiff suffered some measure of compensable injury arising from the accident, and, for that reason, the jury's verdict of zero damages was not responsive to the instructions it was given. In that situation, the only appropriate *300 remedy is to remand for a new trial on the sole unresolved issue, which is the amount of the damages suffered by the plaintiff.
SOUTHWICK, P.J., BRIDGES, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., JOIN THIS SEPARATE WRITTEN OPINION.