982 So.2d 432 (2007)
Dewayne HENSON and AXA Re Property and Casualty Insurance Company, Appellants
v.
William L. RIGGENBACH and Teresa K. Riggenbach, Appellees.
No. 2006-CA-00997-COA.
Court of Appeals of Mississippi.
October 23, 2007.
Rehearing Denied May 20, 2008.
Robert L. Moore, Dawn D. Carson, Clyde X. Copeland, III, Jan F. Gadow, Jackson, attorneys for appellants.
*433 W. Stephens Cox, Clarksdale, attorney for appellees.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. Dewayne Henson and Corey Campbell, each in separate vehicles, collided with James Paris's vehicle. William Riggenbach was a passenger in Paris's vehicle. William and his wife, Teresa, sued Henson, Campbell, and Paris.[1] In a separate suit, William sued his insurance carrier, AXA Re Property and Casualty Insurance Company (AXA), on an underinsured motorist claim. The two suits were later consolidated.
¶ 2. The jury returned a verdict of $10,000 in compensatory damages for William and nothing for Teresa. Additionally, the jury declined to award punitive damages to the Riggenbachs. Post-trial, the Riggenbachs filed a motion for additur or, alternatively, for a new trial. The Yalobusha County Circuit Court granted the Riggenbachs' motion for additur and suggested an award of (1) $30,000 in compensatory damages for William, (2) $5,000 for Teresa's loss of consortium claim, and (3) $10,000 in punitive damages. Henson and AXA declined to accept the circuit court's suggestion of additur. Henson and AXA appeal and argue that the circuit court abused its discretion when it granted the Riggenbachs' motion for additur.
¶ 3. After careful consideration, we interpret the Mississippi Supreme Court's decision in Dedeaux v. Pellerin Laundry, Inc. 947 So.2d 900 (Miss.2007) to require a new trial on damages before this matter is ripe for appellate review. Because the circuit court has yet to conduct a new trial on damages, we must dismiss Henson and AXA's appeal and remand this matter for a new trial on damages.

FACTS AND PROCEDURAL HISTORY
¶ 4. The issues in this appeal emanate from a multi-car accident that occurred on August 17, 2001, near Grenada, Mississippi, among Paris, Campbell, and Henson. Riggenbach was riding as a passenger with Paris when Paris's vehicle collided with an automobile driven by Campbell. After Paris and Campbell impacted, Henson collided with both Paris's and Campbell's vehicles. During the investigation of the accident, allegations arose that Henson and Campbell were racing just before the collision; however, both Henson and Campbell denied any such allegations.
¶ 5. As stated, the Riggenbachs sued Paris, Campbell, and Henson. William also sued his automobile insurer, AXA, for underinsured motorist proceeds. The Yalobusha County Circuit Court consolidated the two suits and proceeded to trial.
¶ 6. The circuit court bifurcated the trial. The jury first considered liability and compensatory damages. Incident to the liability and compensatory damages portion of the trial, the jury found in favor of the Riggenbachs and awarded $10,000 in compensatory damages to William and nothing to Teresa. The jury assessed fifty percent of the liability to Campbell and fifty percent to Henson. The jury attributed no liability to Paris.
¶ 7. Incident to the punitive damages portion of the trial, the jury was to return a verdict in one of the following forms:
"We, the jury, find for the plaintiff, William Riggenbach, in the amount of ____ punitive damages."
"We, the jury, find for the defendant, Dewayne Henson, on the issue of punitive damages."
*434 The jury entered a figure of zero on the line for computation of punitive damages, and circled that portion of the form of the verdict indicative of a finding in favor of Henson. The circuit court considered the jury's verdict to be a finding for Henson. Consistent with the jury's verdict, the circuit trial court entered judgment for William in the amount of $5,000.[2]
¶ 8. Post-trial, the Riggenbachs filed a motion for additur or, alternatively, a new trial. The circuit court found that the jury's verdict was against the overwhelming weight of the evidence and reflected bias or prejudice. Consequently, the circuit court suggested an additur of (1) $30,000 in compensatory damages for William's neck injuries, (2) $5,000 for Teresa's loss of consortium claim, and (3) $10,000 in punitive damages. The circuit court also granted the Riggenbachs' motion for a new trial in the event that all the parties declined to accept the additur. The Riggenbachs accepted the suggestion of additur, but Henson and AXA did not. Henson and AXA appeal. They claim the circuit court abused its discretion when it granted the Riggenbachs' motion for additur.

STANDARD OF REVIEW
¶ 9. An additur is only appropriate when the trial judge makes a finding that the damages awarded by the jury are inadequate because the jury was "influenced by bias, prejudice, or passion" or the award was "contrary to the overwhelming weight of [the] credible evidence." Miss.Code Ann. § 11-1-55 (Rev.2002). The trial court has no fixed standards to proceed under when determining whether an additur is warranted, but rather must make the decision on a case-by-case basis. Entergy Miss., Inc. v. Bolden, 854 So.2d 1051, 1058(¶ 20) (Miss.2003). "The party seeking the additur bears the burden of proving his injuries, loss of income, and other damages." Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1020(¶ 19) (Miss. 2004) (quoting Maddox v. Muirhead, 738 So.2d 742, 743(¶ 5) (Miss.1999)). When reviewing the trial court's decision regarding a motion for an additur, we are limited to an abuse of discretion standard. Id. "In deciding if the burden has been met, we must look at the evidence in the light most favorable to the party in whose favor the jury decided, granting that party any favorable inferences that may reasonably be drawn therefrom." Upchurch v. Rotenberry, 761 So.2d 199, 206(¶ 26) (Miss.2000). We are mindful that "[a]wards set by jury are not merely advisory and generally will not be `set aside unless so unreasonable as to strike mankind at first blush as being beyond all measure, unreasonable in amount and outrageous.'" Patterson, 910 So.2d at 1020-21(¶ 19) (quoting Maddox, 738 So.2d at 743(¶ 5)).

ANALYSIS
¶ 10. While this appeal was pending, the Mississippi Supreme Court handed down Dedeaux v. Pellerin Laundry, Inc., 947 So.2d 900 (Miss.2007). Dedeaux changed existing law regarding the right of appeal when a trial court grants an additur or remittitur. In Dedeaux, a married couple sued a laundry company after an automobile collision. A jury returned a verdict in favor of the husband and the wife and found that the wife was entitled to damages. However, the jury awarded zero damages to the husband. The couple moved for a new trial or, alternatively, for an additur. The circuit court granted the motion for additur and awarded additional damages to both the husband and the wife. The couple appealed to this Court and *435 argued, among other things, that the circuit court erred when it did not award a larger additur. The laundry company claimed that the circuit court did not abuse its discretion when it awarded the additur. This Court held that, because the laundry company did not timely accept the additur, a new trial was necessary as to damages.
¶ 11. Afterwards, the supreme court granted certiorari to clarify the proper procedure involved in a circuit court's decision to grant a motion for an additur. The supreme court stated:
If the trial judge grants a motion for an additur. . . ., such grant of an additur . . . shall take effect only if accepted by all the parties. If all the parties do not agree to the additur . . . then each party shall have the right to either demand a new trial on damages, or appeal the order asserting an abuse of discretion on the part of the trial judge.
Id. at 908(¶ 16) (emphasis added). The supreme court further instructed:
[w]e find that [the plaintiffs] likewise were entitled to have the same option of either accepting the additur or demanding a new trial as to damages. Had this option been offered to all the parties and all parties agreed to the additur, the case would have ended. On the other hand, if any of the parties opted for a new trial on damages, then such a trial as a matter of right should have been available to any party so requesting the new trial.
Id. at 908(¶ 18).
¶ 12. According to Dedeaux, when a circuit court awards an additur or remittitur, that additur or remittitur only takes effect if all parties accept it. If a party does not accept the additur or remittitur, then each party has the right to either (1) demand a new trial on damages, or (2) appeal the circuit court's decision to grant the motion for additur or remittitur.
¶ 13. Dedeaux further sets forth that, if any of the parties opts for or requests a new trial on damages, then that party will have a new trial "as a matter of right." Id. When a party files a motion for additur or remittitur or, alternatively, for a new trial on damages, that qualifies as a sufficient request for a new trial on damages.
¶ 14. The plaintiffs in Dedeaux rejected the additur, albeit implicitly. Here, the defendants rejected the circuit court's additur. Nevertheless, by refusing to accept the circuit court's additur, Henson and AXA did not eradicate the circuit court's decision that the jury's award was against the overwhelming weight of the evidence. Instead, when Henson and AXA rejected the circuit court's additur, it was no longer possible that all parties would agree to the additur. Per Dedeaux, if all parties did not agree to the additur, then each party had the right to demand a new trial on damages. Id. at 908(¶ 16). The Riggenbachs demanded a new trial on damages when they filed their posttrial motion for an additur or, in the alternative, a new trial. Id. at 909(¶ 18). In a sense, after the circuit court found the jury's award against the overwhelming weight of the evidence, by rejecting the circuit court's additur, Henson and AXA effectively opted for a new trial on damages.[3]
¶ 15. A circuit court's decision to grant a new trial is not a final judgment and, as such, "is ordinarily not appealable." *436 Maxwell v. Illinois C.G. Railroad, 513 So.2d 901, 908 (Miss.1987). Because that new trial on damages has yet to occur, there has been no final judgment. As such, this matter is not ripe for appellate review. Accordingly, we dismiss Henson and AXA's appeal and remand this matter to the circuit court for a new trial on damages.
¶ 16. THIS APPEAL IS DISMISSED AND REMANDED TO THE YALOBUSHA COUNTY CIRCUIT COURT FOR A NEW TRIAL CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
ISHEE AND ROBERTS, JJ., CONCUR. CHANDLER, J., CONCURS IN RESULT ONLY. MYERS, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY LEE, P.J., BARNES AND CARLTON, JJ. KING, C.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
IRVING, J., dissenting:
¶ 17. The majority interprets Dedeaux v. Pellerin Laundry, Inc., 947 So.2d 900 (Miss.2007) as mandating a reversal because all parties did not agree to the additur suggested by the trial judge.[4] In other words, the majority holds that, under Dedeaux, the judge's order of suggestion of additur or, in the alternative, a new trial is not now reviewable. With respect for my colleagues, I must dissent because I believe the judgment of the trial court is currently ripe for review. I find nothing in Dedeaux prohibiting our review of a judgment that has been timely and properly appealed. Further, based on my review of the record, I find no evidence that the damages awarded by the jury are inadequate for the reason that the jury was influenced by bias, prejudice, or passion, nor do I find that the damages awarded are contrary to the overwhelming weight of the credible evidence. Therefore, I would reverse the judgment of the trial court and reinstate the verdict of the jury.
¶ 18. The majority finds that the following language in Dedeaux requires this Court to reverse and remand:
[W]e find that [the plaintiffs] likewise were entitled to have the same option of either accepting the additur or demanding a new trial as to damages. Had this option been offered to all the parties and all parties agreed to the additur, the case would have ended. On the other hand, if any of the parties opted for a new trial on damages, then such a trial as a matter of right should have been available to any party so requesting the new trial.

Id. at 909(¶ 18) (emphasis added).
To put the issue in complete context, I quote the rest of what the court said in Dedeaux on this issue:
We thus state, hopefully with clarity, the procedure to be hereafter followed by the trial bench and bar when confronted with the post-trial issues of additurs and remittiturs. Any party aggrieved by the amount of damages awarded pursuant to a jury verdict may file a motion for an additur or remittitur. Miss.Code Ann. § 11-1-55. If the trial judge grants a motion for an additur or remittitur, such grant of an additur or remittitur shall take effect only if accepted by all the parties. If all the parties do not agree *437 to the additur or the remittitur, then each party shall have the right to either demand a new trial on damages, or appeal the order asserting an abuse of discretion on the part of the trial judge. . . . Finally, this rule announced today does not impinge upon a party's right to appeal the jury verdict and trial court judgment on the issue of liability. Hopefully, this newly-established procedure will provide all parties with a level playing field in dealing with issues of additurs and remittiturs.
Id. at 908-09(¶ 16) (emphasis added).
¶ 19. It is true that Dedeaux says that an additur shall take effect only if accepted by all the parties. However, in my judgment, this statement does not mean that if all parties do not accept the additur appellate review of the grant of the additur is foreclosed and that the only immediately available remedy is a new trial on damages. If that were the case, the right of appeal, which Dedeaux also says is available to either party, would be meaningless because the appeal would be automatically delayed pending the outcome of the new trial. Further, if the trial court was dissatisfied with the outcome of the new trial and again granted an additur or remittitur, the right of appellate review would be delayed yet again, assuming both parties did not agree to the additur or remittitur. This could lead to a circuital situation until either the trial judge decided not to grant an additur or remittitur or until the parties, out of exhaustion, reluctantly decided to accept the additur or remittitur. In the latter case, the aggrieved party would still be denied an appeal because there would be nothing to appeal since he had agreed to the additur or remittitur. The end result of all of this would be to effectively deny an aggrieved party a right of appeal unless a jury returned an amount that was satisfactory to the judge. I cannot accept that Dedeaux compels such a result. In my judgment, what Dedeaux really means is that the additur shall not go into effect unless all parties agree, and that there shall be a new trial on damages unless otherwise directed by an appellate court.
¶ 20. The majority seems to conclude that, since the additur was not accepted by all parties, this Court, acting under the authority of Dedeaux, may convert the trial judge's order with the suggestion of an additur into an order granting a new trial. In my view, Dedeaux does not grant such appellate license, nor is there any justification for doing so here even if Dedeaux does grant such license. Rather, we must accept the trial judge's order for what it is: an order containing a suggestion of an additur, the rejection of which by all parties serving as a trigger for the grant of a new trial. The grant of the new trial was never triggered because all of the parties did not reject the additur. The Riggenbachs, who were the parties that requested the additur or, in the alternative, a new trial, accepted the additur. Therefore, their acceptance of the additur legally obliterated their request in the alternative for a new trial. Since Henson and AXA did not want, and never requested, a new trial, there can be no basis for finding that a new trial was, or is, warranted. It is clear that Henson and AXA, by filing their notice of appeal, want appellate review of a ruling that they believe is an abuse of discretion by the trial judge. Therefore, it seems both nonsensical and illogical to me to hold that Dedeaux requires that appellate review be stayed and a new trial commenced when, as here, only one party sought the new trial and that party, by accepting the additur, effectively cancelled the request.
¶ 21. I do not believe that the imperative for a new trial survived the Riggenbachs' acceptance of the condition upon *438 which the new trial was alternatively granted. However, if it did survive, it did not change the nature of the order for a new trial, as it remained a conditional order, contingent upon the refusal of all parties to accept the additur. This brings me to my next point on this issue.
¶ 22. Under Rule 50(c) of the Mississippi Rules of Civil Procedure, an appellate court is authorized to review a motion for a new trial when the granting of it has been conditioned on the propriety of the grant of a JNOV. See White v. Stewman, 932 So.2d 27, 39-40 (¶¶ 33-38) (Miss.2006). In my judgment, granting an additur is akin to the granting of a JNOV, because the trial judge is granting a judgment notwithstanding the verdict of the jury. Granted, it is not a judgment for a different party, but it is no less a judgment notwithstanding the verdict, because it is not the verdict returned by the jury. Therefore, I see no impediment to our reviewing the order for new trial if indeed one still exists, because, on the facts of this case, even if the order containing the suggestion of additur was treated simply as an order for a new trial, it would have to be interpreted as a conditional grant of a new trial, with the grant of a new trial to be triggered by the parties' refusal to accept the suggestion of an additur.
¶ 23. Finally, I point out that neither party raised an issue regarding this Court's jurisdiction. While Dedeaux had not been decided when the briefs were filed in this appeal, I note that, pursuant to Rule 28(j) of the Mississippi Rules of Appellate Procedure, none of the parties have cited Dedeaux as supplemental authority. Therefore, even if I were inclined to agree with the majority's construction of Dedeaux, I would not decide this appeal without first giving the parties an opportunity to advise the Court of their view regarding the effect of Dedeaux.
¶ 24. I now turn to the merits of the issue before us: whether the trial judge abused his discretion in granting the additur. The trial judge found "that the verdict of the jury is against the overwhelming weight of the evidence and reflects bias on [sic] prejudice." More specifically, the judge found that the jury (1) "failed to consider the uncontriverted [sic] evidence of [William's] need for treatment for a neck injury sustained as recommended to [William] by Dr. Eckman, shortly after the accident," and (2) "failed to consider the uncontriverted [sic] evidence as to the effect Plaintiff William Riggenbachs [sic] injuries had on him and their relationship as husband and wife."
¶ 25. Now that I have outlined the findings of the trial judge, I turn to William's compensatory damages claim.
(a) William's claim
¶ 26. As noted, the basis for the trial judge's suggestion of an additur for William is the judge's finding that the jury failed to consider the uncontroverted evidence of William's need for treatment for a neck injury sustained in the accident. According to the trial judge, Dr. Walter Eckman recommended this treatment shortly after the accident. Dr. Eckman first saw William on October 8, 2001. I quote at length from Dr. Eckman's videotaped deposition testimony regarding his first visit with William:
Q. All right. And you examined [William's] neck as well; is that correct?
A. Yes.
Q. And you also looked for, I think, what are called Waddell signs; is that right?
A. Well, we do that as a part of a routine element of our examination and he did not have any positive nonorganic signs.

*439 Q. All right. So  and what was your impression or diagnosis of his neck problems?
A. Well, primarily it came from imaging studies that he had had done. He had a cervical MRI scan which was dated September 14th of 2001, which had been done in Grenada, and he had indications of disc degeneration or spondylosis at c3-4 and c5-6, and he showed moderate canal and foraminal stenosis at c5-6. He had cervical spine films dated one day later. I'm not sure where they were done. They showed some disc degeneration and straightening of his curvature of his spine. He had cervical flexing extension films done on the day that he was here and they did not show any major abnormal motion or instability. He did have mild motion at c5-6 with slight retral esthesis, that is, the bone above would slide backward on the bone below when he would extend his neck backwards.
Q. Were any of those problems in his neck caused by the accident which had occurred on August 17 of 2001, to a reasonable degree of medical certainty?
A. Well, we don't ever know if those anatomic changes have occurred strictly from the accident. They may have well been there before the accident. The  what appears from the history is that the pain started at the time of the accident, so these kinds of changes in our neck serve as sort of a foundation or underpinning of the ways in which we develop pain from mechanical motion or incidents. In other words, we have what may well be degenerative changes, slight changes in our spine that are sitting there, and these may get converted to painful things by some physical or mechanical motion or event.
Q. All right. So the actual structural problems in his neck, are you saying that it could have been caused by an accident two months prior to his visit? Well, actually  I'm sorry  one month prior to the film being done?
A. I'm saying it's probably not very likely that they would be. The anatomy changes probably are not that much due to the accident, although you never know if you could have slight tearing or strains of ligaments but we didn't see a serious form of that. We didn't see a form of that that required major intervention.
(emphasis added).
¶ 27. During examination of Dr. Eckman by William's attorney, the following exchange occurred:
Q. Okay. I want you to assume for the sake of this next question that these are the facts of how the accident occurred, and that is that [William is] a passenger in the right front seat and the vehicle he's in starts to make a left-hand turn and a vehicle hits on the driver's side of the vehicle, and then the vehicle is rear-ended in the back end by a second vehicle and spins them around and his right shoulder hits the door. Based upon that scenario, would you believe that that could cause the injuries to the shoulder region that he's described?
MR. LEWIS: Object to the form.
A. Well, you know, I mean, that's fine. I mean, it just sounds like common sense that if you whack your shoulder it could hurt, so  but, you *440 know, I'm not really treating him for the shoulder problems. He does have MRI findings. You've got Dr. Field who has seen it, so whatever you really want to talk about being wrong with his shoulder we ought to go to those fellows. I mean, I can tell you it sounds like if you hit your shoulder it ought to hurt some, but that's about as far as I would go with agreeing with you. I don't know what else needs to be done or how bad it is based on the, you know, other studies and we have to rely on those orthopedic guys for that.
Q. Assuming that [William] had no prior history of pain in the neck area and, further, based upon the assumption that I just gave you as far as how this accident occurred, and then based upon the MRI that you had done, do you have an opinion, based upon a reasonable degree of medical certainty and probability, as to whether or not this accident resulted in the pain with which he presented to you with?
MRS. CARSON: Object to the form.
MR. LEWIS: Object to the form.
Q. Okay. Go ahead.
A. Yes.
Q. What is the opinion?
A. Well, as I said, the degenerative and anatomic changes serve as a substrate and these unfortunately develop as we get older and we go through life and have various experience [sic] in life, we sort of fall apart. And when we start to have pain is [sic] often related, but not always, but often related to some mechanical event but it can be a very minor event. It can be an event such as getting up out of the chair, turning our head and shoulders and neck around while we're sleeping. Many people start having neck pain, wake up with a crick in their neck when they wake up in the morning so it doesn't have to be an accident. But mechanical events of some kind, some motion or traumatic event can easily be a trigger to begin pain when we have underlying age and degenerative changes in our neck. So it's  if we don't have a history of any pain before then we certainly can ascribe at least some of the pain to the onset at the time of the accident.
Dr. Eckman next saw William almost three months later, and Dr. Eckman's notes indicate that William's attorney was "still working on [William's] motor vehicle accident case" and "told [William] to return for evaluation."
¶ 28. Based on this testimony, it seems quite clear to me that the jury's verdict with respect to William is not against the overwhelming weight of the credible evidence nor is there any evidence that the jury was influenced by bias, prejudice, or passion. In light of the evidence presented to the jury, I believe reasonable persons could differ as to whether William's neck pain was causally related to the accident in question. Therefore, it is my view that the trial judge abused his discretion in suggesting an additur of $30,000.
(b) Teresa's claim
¶ 29. The jury awarded Teresa zero damages on her consortium claim. When a jury awards a verdict of zero damages, this award is tantamount to a finding that the plaintiff sustained no damages. Patterson v. Liberty Assocs., L.P., 910 So.2d 1014, 1021(¶ 21) (Miss.2004); Knight v. Brooks, 881 So.2d 294, 297(¶ 12) (Miss.Ct. App.2004). This cannot be viewed as an *441 inadequate award of damages, but instead as no award at all.
¶ 30. Our supreme court has encountered the exact situation which arises in this case: namely, where the jury found for the injured spouse on the personal injury claim, but against the other spouse on the claim for loss of consortium. Coho Res., Inc. v. McCarthy, 829 So.2d 1, 22-23 (¶¶ 65-67) (Miss.2002); Alldread v. Bailey, 626 So.2d 99, 102 (Miss.1993). In those cases, the court made clear that a loss of consortium claim is a separate and distinct claim from the central personal injury claim and must stand on its own before a trier of fact. McCarthy, 829 So.2d at 22(¶ 66); Alldread, 626 So.2d at 102.
¶ 31. At trial, Teresa testified regarding her relationship with William after the accident and his present inability to perform certain activities; however, she failed to discuss a loss of sexual relations. She did testify, however, that her husband's post-accident problems had brought them closer.
¶ 32. The jury simply did not find that Teresa had proved her loss of consortium claim with sufficient evidence. In ordering an additur to a jury verdict of zero damages, the trial court essentially reversed the jury's decision against Teresa and entered its own verdict. It is my view that the order of an additur in the amount of $5,000 was unwarranted and was an abuse of the trial judge's discretion, and should be reversed. Accordingly, I would reinstate the verdict of the jury against Teresa.
(c) The punitive damage claim
¶ 33. After the punitive damages portion of the trial, the jury returned a verdict granting William zero dollars and stated, "[w]e, the jury, find for the defendant, Dewayne Henson, on the issue of punitive damages." However, the trial judge ordered an additur, finding that the jury should have returned a verdict of at least $10,000. In support of the additur, the trial judge stated:
As to the issue of punitive damages the defendant [Henson's] own testimony was uncontriverted [sic] as to his speed [sic] operation of his car, close behind another car, his admitted careless and reckless driving, and his knowledge of the intersection and residential aria [sic] suggest to the Court that the jury should have returned a punitive damage claim of at least $10,000.
¶ 34. Henson and AXA point out that no evidence was presented during the punitive damages portion of the trial regarding Henson's actions, except for Henson's testimony as to his net worth, and argue that this lack of evidence on the issue of punitive damages precludes any such award.
¶ 35. If a plaintiff seeks punitive damages, the trial of the matter must be bifurcated into two different phases: a liability/compensatory damages stage and a punitive damages stage. Miss.Code Ann. § 11-1-65(1)(b) (Supp.2007). However, in order to reach the punitive damages stage of the trial, the plaintiff must first prevail in the liability and compensatory damages portion of the trial. Miss.Code Ann. § 11-1-65(1)(c). "Then, and only then, if the jury has determined that compensatory damages are appropriate, is the jury allowed to hear, and possibly consider, evidence regarding the issue of punitive damages." Bradfield v. Schwartz, 936 So.2d 931, 938-39(¶ 22) (Miss.2006). Our legislature has pronounced that this punitive damages portion of the trial is to be an "evidentiary hearing" before the trier of fact to determine whether punitive damages are warranted and, if so, in what amount. Miss.Code Ann. § 11-1-65(1)(c)(d).
*442 ¶ 36. Our case law does not favor punitive damages; an award of such damages is considered an "extraordinary remedy" that should be granted "with caution and within narrow limits." Bradfield, 936 So.2d at 936 (¶ 17) (quoting Life & Cas. Ins. Co. v. Bristow, 529 So.2d 620, 622 (Miss. 1988)). "As a general rule, exemplary or punitive damages are `added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong." Id. (quoting Summers v. St. Andrew's Episcopal Sch., 759 So.2d 1203, 1215(¶ 52) (Miss.2000)). "Punitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss.Code Ann. § 11-1-65(1)(a).
¶ 37. In this case, the record is devoid of any evidence put on by William during the punitive damages stage of the trial tending to show that Henson's actions were malicious or grossly negligent with willful, wanton or reckless disregard. The jury was instructed regarding the standard of proof that William was required to meet and was given the option to award zero dollars in the event that it did not find punitive damages warranted. The jury came back with an award of zero damages and a finding in favor of Henson and AXA. As discussed, a jury's verdict of zero damages is equivalent to no jury award at all. Thus, the only reasonable explanation for the jury's award of zero punitive damages to William is that the jury did not find that sufficient evidence was presented to convince it that Henson's conduct amounted to wanton or reckless disregard.
¶ 38. In granting the additur to the jury's award of zero, the trial judge essentially reversed the verdict of the jury, rather than add to it, because the jury specifically found for Henson on the issue of punitive damages. At first blush, it may appear that the jury returned a verdict for William and also a verdict for Henson on punitive damages. However, I interpret the two statements by the jury:
We, the jury, find for the plaintiff, William Riggenbach, in the amount of zero punitive damages.
We, the jury, find for the defendant, Dewayne Henson, on the issue of punitive damages
as a verdict for Henson. I can find nothing in this record to support the trial judge's grant of $10,000 in punitive damages unless perhaps one accepts as a fact that Henson and Campbell were racing at the time of the accident. However, I point out that both Henson and Campbell denied that was the case. But even if that were the case, I am not prepared to say that causing a vehicle accident while racing ipso facto warrants the imposition of punitive damages and that the failure to do so, as a matter of law, manifests bias, prejudice, or passion on the part of the fact finder. Accordingly, I believe the trial judge's award of $10,000 in punitive damages is an abuse of discretion. I would reverse and render the additur and reinstate the finding of the jury that no punitive damages are warranted.
¶ 39. For the reasons presented, I dissent. I would reverse and reinstate the jury's verdicts in toto.
LEE, P.J., BARNES AND CARLTON, JJ., JOIN THIS OPINION.
MYERS, P.J., concurring in part, dissenting in part:
¶ 40. The majority interprets our supreme court's decision of Dedeaux v. Pellerin Laundry, Inc., 947 So.2d 900 (Miss. *443 2007), which established trial court procedure concerning additur and remittitur to be thereafter followed, to require remand on each issue for a new trial on damages. With respect for my esteemed colleagues, I must dissent in part, because I believe that the jury's verdict of zero for Teresa Riggenbach's loss of consortium claim and award of zero punitive damages must be reinstated.
¶ 41. Mississippi Code Annotated section 11-1-55 only provides authority to the trial judge to award an additur when "money damages were awarded." Thus, the court can only order an additur when the jury awards some damages and these damages are insufficient. I agree with the dissent's position that "[w]hen a jury awards a verdict of zero damages, this award is tantamount to a finding that the plaintiff sustained no damages." Dissenting Op. (¶ 13) (citing Patterson, 910 So.2d at 1021(¶ 21); Knight v. Brooks, 881 So.2d 294, 297(¶ 12) (Miss.Ct.App.2004)). The court cannot grant an additur when the jury finds that the plaintiff was not damaged. Therefore, I would find that the trial court's order of additur to the loss of consortium award and award of punitive damages was an abuse of discretion.
¶ 42. Notwithstanding my dissension with the majority's decision regarding the loss of consortium claim and punitive damages, I concur that a remand for a new trial on the compensatory damages is necessary. Dedeaux requires all of the parties to agree upon accepting an additur, or the court's determination regarding the additur will not become binding. Dedeaux, 947 So.2d at 908-09(¶ 16). When all of the parties do not consent to the suggested additur, the available alternative is a new trial on damages, "as a matter of right." Id. at 909(¶ 18). In the case sub judice, the plaintiffs demanded, in the alternative, a new trial. However, the issue of damages has yet to be retried.
¶ 43. It is for these reasons that I must dissent in part.
NOTES
[1] Teresa's claim was for loss of consortium.
[2] Before trial, Campbell settled and was dismissed from the suit, leaving the controversy regarding the cause of the accident to remain between Henson and Paris.
[3] Henson and AXA have not waived their right to appeal the circuit court's decision to grant the Riggenbach's motion for additur or, alternatively, for a new trial. If unsatisfied with the results of the new trial on damages, Henson and AXA would still have the right to appeal the circuit court's initial decision.
[4] The additur suggested by the court comprised (1) $30,000 in compensatory damages for neck injuries allegedly sustained by William, (2) $5,000 for Teresa's loss of consortium claim, and (3) $10,000 in punitive damages.